## Locke v. The S. C. & P. R. Co.

1. **Evidence:** EXAMINATION OF WITNESS: CONCLUSION. A witness will not be permitted to answer a question calling for his conclusion respecting a state of facts to which he has testified.

2. ———: WRITTEN COMMUNICATION: MEANING. It is not material to inquire, in ascertaining the meaning of a written communication, what the author meant thereby, but the inquiry should be limited to the meaning attached to it by the one who received it and acted upon it.

3. ———: INTRODUCTION OF PHOTOGRAPH: RAILROADS. In an action against a railway company on account of an injury caused by the destruction of a bridge, a photograph of the wreck, broken bridge and stream, was *held* to be competent evidence.

4. **Railroads:** NEGLIGENCE: INSTRUCTION. In an action for damages on account of negligence, an instruction to the effect that the negligence of plaintiff must have contributed " directly " to the injury, to excuse defendant, was *held* to be correct.

5. ———: ———: KNOWLEDGE OF EMPLOYES. The defendant would be chargeable with negligence if any of its employes whose duty it was to observe the condition of the bridge, or keep it in repair, had actual or implied notice of the defects therein, or in the exercise of reasonable diligence would have known of them, and failed to make the necessary repairs.

6. ———: ———: INJURY OF EMPLOYES. A railway company is held only to the exercise of ordinary care to prevent injury to its employes.

7. ———: ———: QUESTION OF FACT. Whether under instructions of the superintendent to the conductor, which had been given in evidence, it was the duty of the conductor to stop the train before attempting to cross the bridge, was *held* to be a question of fact for the jury.

*Appeal from Harrison District Court.*

THURSDAY, JUNE 7.

THE plaintiff's husband was a conductor in the employ of the defendant, and had charge of a train which fell through a bridge on the night of August 24th, 1875, whereby he was killed. The plaintiff, as administratrix of her deceased husband, brought this action to recover damages to the estate caused by his death. The grounds upon which she based her right to recover are, that her husband was without fault, but

the bridge was defectively constructed, and . that defendant negligently caused and 'permitted a portion of the bridge to become rotten, unsound, unsafe, and dangerous, and that defendant did not have a watchman at said bridge to guard it and warn approaching trains, by reason of which negligence the accident occurred.   The defendant denied the bridge was defectively constructed, or that it was unsound or unsafe; but alleged that the accident was inevitable by reason of an unprecedented rain storm during the evening and night in question, whereby the banks of the stream and supports of the bridge were washed out.   The defendant also set up as a defense contributory negligence on the part of the deceased.   The jury found for the plaintiff and assessed her damages at seven thousand dollars, for which judgment was rendered, and defendant appeals.

*Joy & Wright*, for appellant.

*Montgomery & Scott* and *Chas. A. Clark*, for appellee.

SEEVERS, J.—I.   The plaintiff introduced as a witness one Moxley, who was the.conductor of a freight train which passed

1. EVIDENCE: examination of witness: conclusion.

over the bridge in question a few hours previous to the train which fell through the bridge.   Moxley testified that he noticed that the water was running swift under the bridge in question, and that when he arrived at Sioux City he reported another bridge, No. 6, as unsafe, and also reported the water as running swiftly under all the bridges between that over Thompson creek, where the accident occurred, and Sioux City.   The witness also testified that he passed Thompson creek bridge in the usual manner, and nothing more occurred in passing it than is usual in passing bridges, and that his report had reference to bridge No. 6.   The defendant asked the witness on cross-examination, " why was it you left no flagman at that bridge (meaning the one over Thompson creek), was there no occasion for leaving any there?"   The plaintiff objected to this question as " calling for conclusion of the witness," which objection was sustained.   The rules of the company, which were introduced in

Locke v. The S. C. & P. R. Co.

evidence, require any conductor when he has reason to believe a bridge has become unsafe, or there is imminent danger of its becoming so by reason of a storm or otherwise, to send back a man with a red flag or lantern to warn an approaching train of the danger. If Moxley had reason to believe at the time he passed over it that the Thompson creek bridge was liable to become unsafe, it was his duty to have left a flagman as required by the rules, and for his neglect the company, under the statute, might possibly be liable. While this is true, we do not believe that it was competent for Moxley to give the reason why he did not leave a flagman. It is very evident from his testimony that he did not do so because he did not think the occasion required it. The jury could not avoid finding that such was his conclusion and he could have stated nothing more. It was, therefore, error without prejudice. But when he stated the condition of the bridge, extent of the water, and the surroundings at the time he passed the bridge, we think this was all the defendant was entitled to. It was for the jury to say, under all the circumstances, whether, in the exercise of ordinary diligence, a flagman should have been left behind.

II. When Moxley made his report at Sioux city the operator attempted to send a telegram to the deceased at Sloan, a station between Missouri Valley and the bridge, but failing to reach him there, for some reason, the dispatch directed to the deceased was sent to the superintendent at Missouri Valley, as follows: "Run slow and carefully over bridges between Thompson Creek bridge to Sioux City. Notice condition bridge 6 and report." The deceased did not receive this dispatch, but the superintendent sent the following, which was received at Sloan by the deceased: "Look out for flagman at Thompson Creek to take you over poor bridges into the city." When on the stand as a witness the superintendent was asked what he referred to by the words, "to take you over poor bridges." It is claimed these words are ambiguous and susceptible of more than one meaning, and that the superintendent should have been permitted to state what he meant. When the conductor received the dispatch he

2. ——: written communication: meaning.

was compelled to base his action thereon. It was, therefore, entirely immaterial what the superintendent meant, but what did the dispatch mean when read by the conductor in the light of the surrounding circumstances. This was a question for the jury.

III.   What was claimed to be a photograph of the wreck and bridge, taken after the accident, was shown a witness and in reference thereto he testified: "It is a very correct picture of wreck next morning. It is as near correct as can be." Whereupon the plaintiff offered to introduce the same in evidence, to which the defendant objected, because "incompetent and that it does not show anything," which was overruled and the same admitted as evidence.

*3. ———: introduction of photograph: railroads.*

It is claimed in argument that there was no evidence showing that the photograph was a copy from the negative taken of the wreck, and that to be competent evidence it must have been taken before there was any change made in the appearance of the broken bridge, and that the photograph shows that work had been done about the wreck before it was taken. In support of such claim *Hollenbeck v. Rowley*, 8 Allen, 473, is cited. In that case, however, there was the further objection that the photograph was a view of only a part of the premises. Besides this, it was held that it was a matter within the discretion of the court to either admit or to reject the photograph.

As the photograph is not before us, we cannot tell whether it shows that work had been done about the wreck before it was taken, or not. There is no testimony so showing. It was shown to be a correct delineation of the bridge. Now it was not objected below that the witness was not competent to so testify, or that no one but the photographer was competent to testify as to its being a correct copy of the negative, and, therefore, these questions cannot be raised for the first time in this court.

We are unable to say what was shown by the picture introduced in evidence, but if it was a correct delineation of the wreck, broken bridge and stream, we conceive it would be com-

petent testimony, for the same reason that the jury, if it was possible for them so to do, would have been permitted to ~~have~~ ~~viewed~~ and ~~inspected~~ the same for the purpose of more readily understanding and properly applying the other evidence.

IV. The court instructed the jury that "the plaintiff must show that the negligence of the defendant, or its employes,

4. RAILROADS: negligence: instruction. caused the injury complained of, and that Locke, the deceased, in no way directly contributed to the injury." The objection made to this instruction is based on the use of the word *directly*. The instruction, however, in this respect is in accord with an exactly similar one, which was approved by this court in *Gates v. B. C. R. & M. R. R. Co.*, 39 Iowa, 45.

V. The third instruction given holds the defendant liable for the insufficiency of the bridge, if "its board of directors,

5. ——: ——: knowledge of employes. or superintendent, or employes, whose duty it was to look after the bridge, or keep the same in repair, had actual or implied notice of the defects in the bridge, or might, in the exercise of reasonable diligence, have known of said defects before the injury complained of occurred, and, on such notice, if any, failed to repair said bridge." The objection made to this instruction is the use of the word *employes*. The defendant seems to concede that if the directors of the defendant, or its superintendent, had the knowledge referred to in the instruction it would be liable, for instructions No. 9 and 10 asked by defendant are based on that theory.

In the absence of any statute, we are not prepared to say the position taken is untenable. But the statute makes railroad corporations liable for an injury to any employe caused by the negligence of other employes, when such negligence is *in any* manner connected with the use and operation of any railway on or about which they shall be employed. Code, Sec. 1307.

If, therefore, owing to the negligence of any employe whose duty it was to "look after said bridge and keep it in repair," the same became out of repair, and in consequence thereof

the accident occurred which resulted in the death of the plaintiff's intestate, the defendant is liable.

The negligence consists in the failure to keep the bridge in repair, and the duty devolving on the employe, which he negligently performed, is directly connected with the use and operation of the railway.

VI. The fifth and sixth instructions are objected to, because "they leave out of consideration entirely the question whether the conductor, Locke, could have avoided the accident by the exercise of ordinary care and prudence."

The court, however, in a previous instruction, had told the jury that plaintiff could not recover if the deceased in any way directly contributed to the injury. This was sufficient. There was no necessity for the court to repeat or state this principle again. The instructions must be considered as a whole. This has been repeatedly held by this court.

VII. The seventh instruction is objected to, because the conductor was only required to use ordinary care to prevent the accident. The defendant was only required to use such care toward the deceased in the instructions given, and that of the deceased must be measured by the same rule. The rights and duties of both to each other are in this respect reciprocal, and the same degree of care and responsibility must be applied to each. Conceding it to be true that as to passengers the defendant and its employes are held liable unless they use extraordinary care and diligence, and conceding there is a practical difference between the two degrees of negligence, yet we think such rule has no application to this case.

VIII. Between "Sloan" and Thompson creek bridge there is a station called "Sargent's Bluff." The telegram heretofore mentioned, sent by the superintendent to Sloan, was also sent to Sargent's Bluff, also the following from the superintendent to the conductor and engineer: "Stop and examine bridge six (6) before crossing it." Both these messages were delivered to the deceased on arrival of the train at Sargent's Bluff. In instruction number seven, asked by defendant and re-

fused, the court was asked to instruct the jury, as a matter of law, that it was the duty of the deceased to direct the engineer to have stopped the train before crossing Thompson creek bridge, and waited for flagman before attempting to cross the same. But we think the question was for the jury to determine, whether in the exercise of ordinary care and discretion, taking into consideration both telegrams, the train should have been stopped before passing over the bridge. The other instructions refused do not require special notice. They are either covered by those given by the court or are incorrect.

IX. It is insisted that the verdict is against the evidence; its careful examination, however, fails to satisfy us it is so clearly so as to justify us in interfering. There was evidence of a more or less satisfactory character tending to prove the several allegations in the petition. It is not claimed that there was no evidence to sustain any point essential to the plaintiff's recovery. The most that can be said is that the evidence was conflicting, so much so that different minds might come to different conclusions in reference thereto. But this is not sufficient to justify our interference. No possible benefit could result from a review of the testimony.

X. It is claimed the verdict is excessive. The deceased was receiving $75.00 a month. His personal expenses we judge from the evidence were about $35.00 per month. His net income, therefore, was about $450 per year. The habits of the deceased were good, and his expectancy of life thirty-six years. The damages resulting to the estate of the deceased cannot be ascertained with anything like mathematical accuracy. At best, the amount to be allowed in a great measure rests in the discretion of the jury. It is only when in the light of the evidence the jury seem to an extent at least to have been influenced by passion or prejudice that we can interfere. If this case be tested by the rule established in *Rose v. D. M. V. R. Co.*, 39 Iowa, 246, the verdict cannot be regarded as so excessive as to justify our interference.

AFFIRMED.