I. M. REDDINGTON, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

**Master and Servant:** OPERATION OF RAILWAY: *Fellow servant.* An injury received by a brakeman, while assisting in coaling an engine, through the negligence of a co-employee in operating the hoisting crane so as to knock him from the platform, such movement of the crane not being necessary in order to permit the train to start, "is not an injury in any manner connected with the use and operation of any railroad," within the meaning of Code 1873, section 1307.

*Appeal from Cerro Gordo District Court.*—JOHN C. SHERWIN, Judge.

THURSDAY, APRIL 7, 1899.

THIS case is before us for further consideration, a rehearing having been granted. It is an action to recover for personal injuries sustained by plaintiff when in the employment of defendant as head brakeman on a freight train. Plaintiff alleges that said injuries were caused by the neglect of one Anderson, a co-employee, while he and the

plaintiff were engaged in coaling the engine that drew the train upon which plaintiff was employed as brakeman. Defendant answered, denying generally, and alleging contributory negligence on the part of the plaintiff. At the close of the evidence for plaintiff, the defendant moved for a verdict upon several grounds, which, in effect, are as follows: That it does not appear that plaintiff and any co-employee of his were handling railroad machinery moved on railroad tracks at the time of his injury; that it does not appear that plaintiff was at the time of his injury exposed to the hazards or dangers incident to the use and operation of the railroad, nor that he was injured by any wrongful act in any manner connected with the use and operation of a railroad; that it does not appear that plaintiff was free from negligence contributing to his injury, but it does appear that he was guilty of such negligence. This motion was sustained, and a verdict and judgment rendered for the defendant. Plaintiff appealed.—*Affirmed.*

*S. P. Mills, Smith & Pollans, Stanberry & Clarke,* and *Sullivan & Longley* for appellant.

*J. C. Cook* and *Blythe, Markley & Smith* for appellee.

GIVEN, J.—I. The facts shown by the evidence necessary to be noticed are these: On and for some time prior to November 1, 1894, the plaintiff was in the employment of the defendant as head brakeman on a freight train, and on that day was so employed on a train running west from North McGregor to Mason City. Defendant had at different stations, including the station of Monona, coal sheds from which to supply its engines, at each of which one or two men, known as "coal heavers," were employed to have the coal ready, and to put the same on the engines, or to assist in doing so. Where there was but one coal heaver employed at a shed, as was the case at Monona, it was the duty of the head brakeman to assist him in coaling the engine draw-

ing the train on which the brakeman worked. At Monona, the coal was put into large iron buckets, and placed in position on an elevated platform by means of a derrick, with a windlass, preparatory to the coming of engines for coal. In coaling an engine at Monona, the coal heaver stood on the ground at the foot of the derrick, and worked the windlass so as to raise and lower the buckets, and assist in swinging them to and from the engine, by turning the derrick. It was the duty of the head brakeman, in assisting in coaling the engine of his train at Monona, to go upon the elevated platform, to give signals to the man at the windlass when to hoist and lower the buckets; to hook the derrick chain to a full bucket, give a signal to hoist it, and, when sufficiently lifted, to aid in swinging it around over the tender; to open the spring that holds the bottom of the bucket; to replace the bottom when the bucket was emptied; and to aid in swinging it around to the place on the platform. It was while thus employed that plaintiff was injured. He had hold with both hands of an empty bucket that had been lifted above his head, and was walking backward, with his head under the bucket, pulling it towards him, for the purpose of swinging it into place. Without signal from him, the bucket was lowered so as to strike him and knock him off the platform to the ground, about eight feet below, by reason of which he was injured. At the time this occurred, the engine and train were standing still; the engineer being on the ground, oiling the engine, and the fireman engaged in drawing clinkers from the firebox. The negligence charged is that, while plaintiff was so employed, "the said Anderson negligently and recklessly let loose of said crank, which he was then managing for the purpose of raising and lowering said bucket, while said bucket was being moved back to said coal shed after the same had been unloaded, without any notice or warning whatsoever that he intended so to do."

II.   Section 1307 of the Code of 1873, under which this action is brought, is as follows: "Every corporation

operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the willful wrongs, whether of commission or of omission, of such agents, engineers, or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." This section, as originally enacted, and as amended, has been frequently construed by this court. These various decisions were carefully reviewed in the recent case of *Akeson v. Railroad Co.,* 106 Iowa, 54; and, adhering to the law as therein announced, we proceed to a further consideration of this case. We said in *Akeson's Case* as follows: "The only dangers peculiar to railroading are those occasioned by the movement of the engines, cars, and machinery on the track, or directly connected therewith. It is evident that the statute contemplates such injuries only as are caused by the negligent acts of employees so engaged. In no other proper sense is a railroad used and operated. The peculiarity of the railroad business, which distinguishes it from any other, is the movement of vehicles or machinery of great weight on the tracks by steam or other power; and the dangers incident to such movement are those the statute was intended to guard against. If, then, the injury is received by an employee whose work exposes him to the hazards of moving trains, cars, engines, or machinery on the track, and is caused by the negligence of a co-employee in the actual movement thereof, or in any manner directly connected therewith, the statute applies, and recovery may be had. Beyond this, the statute affords no protection. The purpose of the lawmakers was evidently not to make men, because employed by railroad companies, favorites of the law, but to afford protection owing to the peculiar hazards of their situation." A rehear-

ing was granted, that we might again, aided by further argu-
ments, consider whether the facts bring this case within said
section 1307, as construed in the *Akeson Case.*

III. The plaintiff does not allege or claim that he
was injured by the actual movement of machinery on the
railroad track, but insists that the handling of the derrick
in coaling the engine was "directly connected therewith,"—
that is, with the movement of the engine,—and that, there-
fore, his case comes within the provisions of said
section 1307, as construed in *Akeson v. Railroad Co.,
supra.* In that case Akeson and Forshay were employed
to coal engines from coal cars alongside of the engine,
by carrying the coal from the car to the tender, in hand-
barrows, over planks laid from the car to the tender as a
footway. They had in this way coaled an engine that had
been detached from a passing train and moved into position
for that purpose. The coaling having been completed,
Forshay remained upon the engine, to go on it to the water
tank, where it was to be immediately moved. Plaintiff
passed over the plank, onto the coal car, whereupon Forshay,
for the purpose of allowing the engine to be immediately
moved, shoved the plank onto the car, and in so doing struck
and injured the plaintiff. We said: "The very purpose of
removing the plank was to enable the engine to move, and if,
in doing this, Forshay was negligent, such negligence was so
clearly connected with the movement as to come within the
terms of the statute. Indeed, it is difficult to conceive of a
case where negligence not in the actual movement of an
engine is more directly connected therewith." Upon closer
investigation, we reach the conclusion that that case is dis-
tinguishable in its facts from this. That engine could not be
properly moved until the plank was detached from it. There-
fore the removal of the plank was not remotely, but imme-
diately connected with the moving of the engine. All that
remained to be done to move the engine was to give it steam.
Let us suppose that the reverse lever of that engine had been

set to run backward, and it was desired to go forward.   The lever would have to be changed before giving the engine steam, yet it would hardly be claimed that changing the lever to the forward movement would not be immediately connected with the movement of the engine.   Now, the removal of the plank was just as directly connected with the movement of that engine as would have been the reversing of the lever in the case we have supposed.   It is true that this engine could not be moved without coaling, and that the use of the crane was necessary in providing it with coal, but not more necessary than any act that preceded, in the mining of the coal, or in putting it in the shed to be handled by the derrick. The handling of the derrick and of the windlass thereon in this case had no more connection with the movement of the engine than in *Luce v. Railway Co.,* 67 Iowa, 75.   In that case the plaintiff was employed in a coal house of the defendant, and while hoisting coal for the purpose of filling the car, or, as the record shows, coaling an engine, a co-employee so negligently managed the crane that it struck the plaintiff's arm and broke it.   The court said:   "The danger arising from the use of the crane does not appear to have been greater or less by the fact that it was used in loading a railroad car; nor does it appear that the plaintiff while engaged in his duty, was exposed to any danger from the operation of the road,"—citing cases.   In *Stroble v. Railway Co.,* 70 Iowa, 555, the plaintiff, with another, was employed to elevate coal to a platform for delivery into the tenders of engines; and, in the performance of their duty, it was necessary to pass up and down stairs or steps which were out of repair, and in consequence of which the plaintiff fell and was injured.   It was said:   "The coal house and stairs were a part of the contrivances for placing fuel within easy reach of the defendant's locomotives, and employees charged with any duty pertaining thereto had no connection with the use and operation of the railroad which is contemplated by the statute.   It is true, there is a remote connection, as there is in the case of

the coal miner, or teamster who hauls the coal, all being employed in work which in the end will supply the coal to the locomotive; but this is not the connection contemplated by the statute." In *Johnson v. Railway Co.,* 43 Minn. 207 (45 N. W. Rep. 156), the plaintiff was a member of a crew of workmen engaged in repairing one of the defendant's bridges, and, in performing the work, it was necessary to leave the draw open; and, through the negligence of another employee, the draw was left unfastened, and was blown shut by the wind, and the plaintiff injured while at work. It was held, under a statute quite similar to ours, that the case was not within the provisions of the act. Appellee's counsel speak of the *Akeson Case* as a "border line case," and appellant's counsel insist that this is another border-line case, on the same side of the line. The distinction between these cases is not as broad as between either case and many others that might be cited, yet sufficiently so to show that the wrong complained of in the one was directly connected with the use and operation of a railroad, while in the other it was not. The writer wishes to add that his view of this case has always been that it is not within the statute. The former opinion was written under the supposition that it followed the *Case of Akeson,* but, upon further investigation, we reached the conclusion that this case is not controlled by that, and that the judgment herein should be AFFIRMED.