A. L. DUNN, Administrator of the Estate of August Smith, Deceased, Appellant, v. THE CHICAGO, ROCK ISLAND AND PACIFIC RY. COMPANY.

**Negligence:** EVIDENCE: CONCLUSION. In an action for the death
1 of a section hand struck with an iron bar thrown by a moving train, deceased's statement that a co-employé left the bar too near the track was a conclusion as to the negligence of a co-employé and inadmissible, though part of the *res gestæ*.

**Same:** EXPERT EVIDENCE. The inquiry of a physician as to whether
2 an injury might not have been caused by an iron bar thrown by a swiftly moving object, as a train, was objectionable, as the question for the expert was whether the injury might not have been caused by the impact and not whether the iron might have been thrown by the train.

**Railroads:** NEGLIGENT OPERATION OF TRAIN: EVIDENCE. Where a sec-
3 tion hand was not in a position of peril known to the engineer of a passing train and there was no evidence that the engineer saw, or could have seen the iron bar thrown by his train and causing the death of the section man in time to have stopped the train, or if he had seen it that its position was such as to suggest a possible injury to deceased, an allegation of negligence in the operation of the train was wholly without support.

Railroads: INJURY TO SECTION HAND: NEGLIGENCE OF CO-EMPLOYÉ.
The ordinary work of a section hand, which is wholly discon-
nected from the operation and control of cars or trains, is not
an employment connected with the use and operation of the
road, within the meaning of Code, section 2071, making a rail-
way company liable for the negligence of a co-employé.

Same: WHEN A QUESTION OF LAW. Where there is no dispute as to
the nature of the employment, or character of the work at the
time of accident, the question of whether one injured was en-
gaged in work connected with the use and operation of a rail-
road, within the meaning of Code, section 2071, is one of law
for the court.
Weaver J., dissenting.

*Appeal from Cass District Court.*— Hon. A. B: Thornell,
Judge:

SATURDAY, MAY 19, 1906.

Suit at law to recover for the death of the plaintiff's in-
testate. Directed verdict for the defendant. The plaintiff
appeals.— *Affirmed.*

*W. A. Follett* and *B. I. Salinger,* for appellant.

*Carroll Wright, J. L. Parrish,* and *J. B. Rockafellow,*
for appellee.

Sherwin, J.— Decedent was in the employ of the de-
fendant as a section hand, and while he, with other mem-
bers of the gang, were engaged in repairing the track by
putting an occasional new tie under the rails thereof, one of
his fellow workmen left a heavy crowbar on the ground at
the side of the track, so near to the rail that a passing train
struck it and hurled it against the deceased with such force
as to cause a fatal injury. The petition alleges negligence
on the part of the co-employé in leaving the bar where he
did, and that the train which struck the bar was negligently
operated.

No one witnessed the accident except the deceased, and

within two or three minutes thereafter, he stated to his fellow workmen that he had been struck by the bar, and that it had been set in motion by the train. A witness also testified that in the same conversation he said that his co-employé had left the bar too near the track, but this was stricken out on motion of the defendant. The ruling was clearly right. The statement was a conclusion relative to the negligence of the co-employé, and though a part of the *res gestœ* it was incompetent. Furthermore, another witness later in the trial gave the same testimony, which remained for the consideration of the jury.

1. NEGLIGENCE: evidence: conclusion.

One of the plaintiff's expert witnesses, a physician, was asked whether decedent's injury might have been caused by a crowbar "thrown by coming in contact with a swiftly moving object like a train." An objection to the question was sustained, and rightly so. The material question for the surgeon was whether the injury might have been caused by the impact, and not whether the bar might have been thrown by the train, or some other force.

2. SAME: expert evidence.

The motion for a directed verdict was based on several grounds, and was sustained generally. Among others, it was averred that the original petition did not charge the defendant with negligence, and that there was no proof of the negligence of either the defendant or decedent's co-employé, or any evidence tending to show that decedent was free from contributory negligence. The original petition sufficiently averred the negligence of the co-employé, and the amendment thereto alleged negligence in failing to stop the train after decedent's peril was discovered by the trainmen, or might have been by the exercise of reasonable care. There is no evidence showing negligence in the operation of the train. The deceased was not in a known position of peril, and there is no evidence that the engineer either saw or could have seen the bar in time to have stopped the train, or that if he

3. RAILROADS: negligent operation of train: evidence.

had seen it, its position was such as to suggest contact with the train, or injury to the deceased if such contact should occur. While the evidence as to the negligence of the co-employé, and as to decedent's freedom from contributory negligence, is not as satisfactory as in many cases, we are of the opinion that it made a fair case for the jury on those issues.

The important and absolutely controlling question in this case is whether the defendant is liable for the negligence of decedent's co-employé, under section 2071 of the

**4. RAILROADS: injury to section hand: negligence of co-employé.** Code. And there is involved in this inquiry the question whether such co-employé was engaged in work which was in any manner connected with the use and operation of the defendant road, within the meaning of the statute. The statute has been so many times construed adversely to the appellant's contention that we deem the question no longer an open one in this state. The deceased clearly was exposed to the peculiar hazards incident to the use and operation of railroads, and was within the protection of the statute. *Jensen v. O. St. L. Ry. Co.,* 115 Iowa, 404; *Akeson v. C. B. & Q. Ry. Co.,* 106 Iowa, 54. But the ordinary work of a section gang on and along the track is not so connected with the use and operation of a railway as to bring it within the intendment of the statute and make the company liable for the negligent act of one of the gang, when he is simply so engaged. We must not be understood to say or mean, however, that this rule is applicable when the work of the gang is such as to require it to direct or control the movement of trains at a particular time and place. See *Keatley v. I. C. R. R. Co.,* 103 Iowa, 282. What we mean is that the ordinary work of the section gang, disconnected from any control of the train, is not within the meaning of the statute. *Connors v. Chicago, N. W. Ry. Co.,* 111 Iowa, 384; *Akeson v. Railway Co., supra; Reddington v. Railway Co.,* 108 Iowa, 96; *Larson v. Railway Co.,* 91 Iowa, 81; *Stroble v. Railway Co.,* 70 Iowa,

556; *Matson v. Railway Co.,* 68 Iowa, 22; *Malone v. Railway Co.,* 65 Iowa, 417; *Hathaway v. Illinois Central R. Co.,* 92 Iowa, 337.

We shall not take the time to review the cases cited in support of our holding, for they have been often cited and discussed, but we call especial attention to the Hathaway Case, in 92 Iowa, 337, because it directly answers the appellant's contention that the repair of the track is essential to the operation of the road. In that case a workman was injured while repairing an engine in the roundhouse, by the negligent act of a fellow workman. It was held that the repair of an engine or car was not so connected with the operation of the road as to create liability under the statute. The condition of the motive power of a railway, ordinarily is as essential to its operation as the condition of its track, and there is no difference, in principle, between that case and this. It may be well to say in this connection that some of the language used in the Stroble Case has been modified in later cases, but the modification in no way affects the present inquiry.

Nor is the conclusion that we reach in conflict with our own case relied on by the appellant, with one exception which we shall call attention to further along. In *Williams v. Railway Co.,* 121 Iowa, 270, and Jensen v. O. & St. L. Ry. Co., *supra,* the negligent acts complained of were directly connected with the movement of rolling stock, and the only questions determined were that the plaintiffs were exposed to the peculiar dangers and perils attendant upon the use and operation of railroads. The same statement applies also to the following cases. *Keatley v. Railway Co.,* 94 Iowa, 685 (the first appeal in that case); *Butler v. Railway Co.,* 87 Iowa, 206; *Pyne v. Railway Co.,* 54 Iowa, 223; *Pierce v. Railway Co.,* 73 Iowa, 140; *Frandsen v. Railway Co.,* 36 Iowa, 372, which was decided before the present statute became effective. The only case really affording any support for the appellant's contention is *Haden v. S. C. & Pac. Ry.*

*Co.,* 92 Iowa, 226. There a section foreman, while engaged in his duty, was injured by a passing train. It was contended by the railway company that his duties were " wholly connected with the track, and in no way connected with the use and operation of trains thereon." We held that, while he was not engaged in the operation of trains, his work was on and along the track on which trains were operated, and had especial reference to train movements in the way of keeping the track in repair and in condition therefor, and that his work was therefore of the hazardous kind contemplated by the statute. It was further said " that under section 1307 of the Code of 1873, a person engaged in keeping in repair the track of a railroad company, was engaged in the business of operating a railroad." There was no question but what Haden was a protected employé under the decisions. Nor was there any question about his having been injured by the negligent act of employés who were operating a moving train. Hence the statement that we have quoted was wholly foreign to any issue, or in fact to any question in the case, and in so far as it purported to find support in the reasoning in Malone v. Railway Co., *supra,* it clearly was wrong; the reasoning of that case being directly opposed to the statement. It was said in the Malone Case that the removal of snow from a railroad track was in no proper sense connected with the operation of the road. Furthermore, the language in the Haden Case is expressly referred to and discredited in the Connors Case, *supra.* Some, at least, of the cases, recognize and point out the distinction between the exposed risk of the injured, and the work which is so connected with the operation of the road as to create liability under the statute, and there can now be no question as to the distinction between the two.

Finally, it is said that the question under consideration was exclusively a question for the jury, and that it should have been submitted to it. In some cases fact questions may arise, which make it necessary to so submit this particular

question, but such is not the case here.   There was no ques-

5. Same: when a tion as to what the employment was, or as to
question of
law.        what the men were doing at the time.   It was,
therefore, a question of law for the court.   A verdict was
properly directed, and the case is affirmed.

Weaver, J. (dissenting).— Conceding that the conclu-
·sion announced is not without the color of support in some
of the cited cases, it remains true in my judgment that none
of our decisions have gone to the extent of the position af-
firmed by the majority opinion.   Code, section 2071, so far
as it bears upon the case, as in the following language —
" every corporation operating a railway shall be liable for
damages sustained by *any* person including *employés* of
such corporation, in consequence of the neglect of the agents,
or by the mismanagement of engineers *or other employés
thereof,* and in consequence of the willful wrongs, whether
of commission or omission, of such agents, engineers *or other
employés,* when such wrongs are *in any manner* connected
with the use and operation of any railway *on or about* which
they shall be employed."   Now the proposition to which the
majority opinion commits us is that, conceding the employ-
ment of the deceased to have been such as to expose him
to the peculiar hazards of the use and operation of railways,
thereby bringing him within the protection of the statute;
and conceding farther that by the negligence of a co-em-
ployé he was struck by a missile set in motion by a moving
train, such injury 'gives rise to no right of action because
the work in which the negligent co-employé was engaged
was not connected in some manner with the movement of the
train by which the injury was done.   This ruling, I respect-
fully submit, works a subversion of the manifest spirit and
intent of the statute, and, as I hope to show, is opposed to
the principles approved in many of our precedents which
have been hitherto unquestioned.   It is true that in some
of the earlier decisions it seems to have been held that to
bring a case within the statute both the injured and the neg-

ligent employé must be engaged in some branch of the service directly connected with the operation of the road; i. e., the movement of cars or trains. For instance in *Smith v. Railroad Co.,* 59 Iowa, 74, it is said that " to entitle an employé of a railway company to recover for personal injuries inflicted through the negligence of a co-employé, it must be shown that his (the plaintiff's) employment was connected with the operation of the railway."

This language or its equivalent characterizes the discussion of the statute in several cases and some of comparatively recent date, and yet if there is anything now settled in respect to these questions, it is that the occupation of the employé at the time of his injury need have nothing whatever to do with the train service, or any other service having to do with the movement or operation of trains in order to bring him within the protection of this law. It is sufficient if the work in which he is engaged is of such character, or the place in which he is required to perform it is so located, that while thus properly engaged he is at the moment exposed to the peculiar hazards and dangers created or occasioned by the use or operation of the road. *Jensen v. Railroad,* 115 Iowa, 404; *Pyne v. Railroad,* 54 Iowa, 225; *Pierce v. Railroad Co.,* 73 Iowa, 140; *Butler v. Railroad Co.,* 87 Iowa, 206; *Deppe v. Railroad Co.,* 36 Iowa, 52; *Akeson v. Railroad Co.,* 106 Iowa, 54; *Haden v. Railroad Co.,* 92 Iowa, 226. Departing from the *dicta* and the propositions asserted *arguendo* in some of the earlier cases, it is now held that " the kind of labor in which the employé is engaged is not the test of his right of recovery so much as the fact whether in the performance of that labor he is for the time being exposed to the peculiar hazards which arise from or are connected with the operation and use of the road. Jensen v. Railroad Co., *supra;* Pyne v. Railroad Co., *supra;* Canon v. *Railroad Co.,* 101 Iowa, 618.

But it is here argued that conceding the rule to be sufficiently broad to include within its protection a track hand

or sectionman when at work upon a railway track in actual use for moving trains, the statute further provides that, in order to recover, the " wrong " by which he has been made to suffer was in some manner connected with the use and operation of the road. Let all this be admitted, and we still fall short of the conclusion reached by the majority. The vice of the reasoning by which that result is obtained rests in the assumption that negligence in order to be " in any manner connected with the use and operation of a railway " must be the negligence of some one who exercises some sort of control over or has some connection with the movement of trains. I take the position, however, that " negligence having connection with the use and operation of a railway " has no exclusive reference to negligence by employés having charge of or control over the movement of cars or trains and that this has been definitely and frequently decided. In the Deppe Case, *supra,* the injured man was a shoveler and the negligence was that of a foreman -or some other servant of the company directing the excavation of a gravel pit.

In *Locke v. Railroad Co.,* 46 Iowa, 113, a train hand was injured, but the negligence causing the injury was that of some agent or employé who failed to protect or repair a bridge. The trial court there charged the jury that if an employé " whose duty it was to look after the bridge or keep it in repair " had been negligent in that respect and thereby caused the accident the company was liable, and this instruction was upheld on appeal. Speaking of the alleged negligence and of the application of the statute thereto the court by Mr. Justice Seevers said " The negligence consists in the failure to keep the bridge in repair and the duty devolving on the employé which he negligently performed *is directly connected with the use and operation* of the railway." If the work of repairing a *bridge* over which trains must pass is " directly connected " with the use and operation of the road, a proposition which seems

too clear to me to require argument, by what process of reasoning are we to justify the conclusion that the work of repairing the *track* is not so connected? The one work is as essential to and as intimately connected with the movement of trains as is the other.

In Pierce v. Railroad Co., *supra,* the plaintiff was a shop hand. Acting upon the order of a superior he went to the passenger station to assist in removing some screens from cars standing there. While attending to the duty under the direction of his foreman he was injured by a movement of the train. In affirming a judgment for the plaintiff we said that even if the employés in charge of the train had no notice of his exposed situation and were therefore not negligent in the premises, then the failure of the shop foreman who was directing the labor to notify the trainmen, was such negligence as would render the defendant liable.

In *Frandsen v. Railroad Co.,* 36 Iowa, 372, the hand car of the section gang had not been fully removed from the track and was struck by a passing train with the result that a wheel was knocked off the hand car and hurled against the plaintiff. The section foreman neither had nor exercised any control over the movement of the train, nor was there any negligence on part of any person having anything to do with such movement, yet the company was held liable. Shall it be said that if a section man leaves a hand car upon or near the track to be struck by a passing train to the resulting injury of a co-employé the company is to be held liable, yet if the same employé negligently leaves a crowbar or sledge hammer in like exposed situation with like resultant injury the company is not liable?

In *Smith v. Railroad Co.,* 78 Iowa, 583, the plaintiff, a snow shoveler, was in a way car riding at night to his place of work. The train had stopped with the way car standing on a bridge. Having occasion to go to the water-

closet he found that apartment filled with shovels and picks and passed out upon the platform of the car from which he fell and was injured. Neither he nor his co-employés whose negligence in filling the closet with their implements of labor had the slightest control of the movement of the train. Indeed his injury was not attributable to any movement of the train, yet it was held that his service and his co-employés' negligence were so " connected with the use and operation " of the road as to render the company liable.

In *Akeson v. Railroad Co.,* 106 Iowa, 56, the negligent employé and the employé injured by such negligence were both coal shovelers. The injury was occasioned by the act of one of the shovelers who being on the engine which they had just coaled pushed off a plank over which they had carried the coal to the tender. Neither of these men had any control of or connection with the actual movement of engine or cars. Engine and cars were in fact at a standstill when the accident happened, but this court said that, as it was necessary to remove the plank preparatory to starting the engine, the negligence with which it was done was connected with the use and operation of the railway within the meaning of the statute. If the act of a coal shoveler in removing a gang plank in order to insure safe movement of an engine is labor connected with the operation of a railway, how shall we say that the work of a gravel shoveler engaged in preparing a safe track in front of the same engine is not within the contemplation of the same statute? Are we not thus involving ourselves in an overrefinement of distinction destructive of the benefit which the Legislature sought by this enactment to secure to a large class of men exposed to peculiar and great hazards in a *quasi* public service?

I am aware that in a later case, *Reddington v. Railroad Co.,* 108 Iowa, 96, we appear to have held that, while it is labor connected with the operation of a railroad to push

away a gang plank used in coaling an engine, yet the pushing way of a swinging crane used for the same purpose is not labor connected with such operation, a distinction which gives added pertinency to the query I have just propounded. But I have no present quarrel with the Reddington Case which expressly reaffirms the decision in the Akeson Case. In neither of them was it necessary to decide whether the benefit of the statute is under all circumstances confined to cases in which the service of the negligent employé is directly 'connected with the movement of trains, and so far as the language in either opinion is susceptible of that interpretation it is clearly dictum.

Our statute was the subject of consideration by the Supreme Court of Minnesota in *Njus v. Railroad Co.*, 47 Minn. 92 (49 N. W. 527), which was an action brought in that state for an injury sustained by the plaintiff in Iowa. The plaintiff was a section hand 'engaged with others in unloading iron bars from flat cars along the railway track. At one point 'when the train was at rest and the men were engaged in throwing off the bars, plaintiff was injured in consequence of the negligent manner in which one of his fellow laborers let a bar drop. The court quoting our statute as authority for such action, and reviewing our cases, including most of those cited in the present majority opinion, say " From our examination of the Iowa decisions, we are satisfied that, were the case before the Supreme Court of that state, it would sustain plaintiff's action." We may add that the Minnesota court also confesses its inability to distinguish some of our cases which uphold a recovery from some others where recovery has been denied — a feeling of uncertainty which future generations of lawyers will no doubt share with that distinguished tribunal. That state has also a statute which is in substance identical with our own and its courts agree with this court in construing it as applicable only to employés whose labor in some manner

exposes them to the hazards peculiar to railway operations.

Applying this rule in *Blomquist v. Railroad Co.,* 65 Minn. 69 (67 N. W. 804), a precedent cited approvingly by us in the Akeson Case, it was held that sectionmen engaged in repairing a track in front of a moving train were within the protection of the statute and that for an injury occasioned to one of them by the negligence of a fellow section hand in dropping a rail when in haste to clear the track for the passage of a train the company was liable. Under these circumstances the court says that " the plaintiff's employment involved an element of hazard or condition of danger *peculiar to railroad business and intimately connected with and growing out of* the operation of the road." Speaking of this same statute, though upon another phase of its application, the same court has well said: " The statute is a police regulation intended to protect life, person, and property by securing a more careful selection of servants and a more rigid enforcement of their duties by railroad companies, by making them pecuniarily responsible to those of their servants who are injured by the negligence of incompetent or careless fellow servants. It is remedial in its nature and must be construed, if not liberally, certainly in accordance with its obvious purpose and spirit." *Mikkelson v. Truesdale,* 63 Minn. 137 (65 N. W. 260). See, also, *Ditberner v. Railroad Co.,* 47 Wis. 138 (2 N. W. 69).

Is there any room to doubt the purpose and spirit of our statute? Is it not intended to protect the life and limb of the railway employé exposed to the hazards of railway use and operation by making the corporation liable to him whenever those hazards peculiarly or naturally incident to such use and operation have been increased to his injury by the negligence of a co-employé? Under the rule prevailing in this state trainmen and track hands are co-employés and in the absence of statute neither could recover

from the employer for injuries occasioned by the negligence of the other. Payne v. Railroad Co., *supra*.

But let us suppose that in the case before us the crowbar negligently left by the sectionman on the track, instead of being struck and driven through the air, had gone under the wheels, derailing the engine, to the injury of the engineer or fireman. Would it be contended for a moment that for such an injury there is no liability under the statute? And yet we could not uphold a recovery of damages in such case without repudiating the principle upon which the majority opinion is based. Is not the danger of derailment one of the peculiar hazards of train operation? Conceding it to be such, is not the carelessness of any employé which brings about such an accident negligence " connected with the operation " of a railway? Again, is not the danger of being struck by a moving train, or by missiles hurled from the track by the impact of a swiftly moving pilot or wheels, one of the peculiar hazards of railway operation to which the laborer on or along the track is exposed? See *Doyle v. Railroad*, 77 Iowa, 607; *Reilly v. Railroad*, 122 Iowa, 525. If this be so (and under the concession of the majority it cannot well be questioned) then is not the carelessness which brings about such a casualty negligence " in connection with the operation " of the road? As the accident is one which occurred in and is peculiar to railway operations it follows as a logical necessity that the negligence which caused it has some connection with such operations and such is the class of accidents or injuries contemplated by the statute.

To emphasize my proposition that the Legislature did not intend the statute in the narrow and restricted sense which this decision gives to it I again call attention to the parts of the section which I have italicized. It provides for recovery of damages on account of the negligence and willful wrongs of agents, engineers, and " *other employés* "

whenever such negligence or wrong " *is in any manner connected* with the use and operation of any railway train *on or about* which " the servant shall be employed. The expression " *in any manner connected*," was clearly intended to prevent the avoidance of this liability by any narrow or illiberal construction of the terms employed; while the phrase " *on or about which* " was just as clearly intended to include employés of all kinds, grades, and classes whose service exposed them to the hazards peculiar to railway use and operation and to afford each of such employés a remedy for injuries received by the negligence of the other with respect to those peculiar hazards. Therefore when the majority opinion says that " the deceased was exposed to the peculiar hazards incident to the use and operation of railroads and was within the protection of the statute " and when it is conceded, as it must be, that the risk of such accidents is one of the peculiar hazards of railway operation and that the injury thereby resulting to the deceased was caused by negligence of a co-employé with reference to those peculiar hazards, there remains no possible room for denial of the right to recover damages. Of the cases cited in support of the majority opinion I wish to say that in my opinion none are in point upon the question we are here discussing. In *Connors v. Railroad Co.,* 111 Iowa, 384, the holding was simply that the negligence of sectionmen in burning weeds on the right of way to the injury of adjacent property was not negligence in operation of a railway within the meaning of Code, section 2071. In *Larson v. Railroad,* 91 Iowa, 81, we held that negligence in the operation of a hand car was negligence in the operation of the road within the meaning of the statute. In *Stroble v. Railroad,* 70 Iowa, 555, negligence in maintaining a flight of stairs or steps to a platform from which coal was delivered to engines was said not to be negligence in the operation of the road. It should also be said that the decisive proposition in

that case was one of contributory negligence or assumption
of risk, it being expressly found that it was plaintiff's duty
to see that the stairs were kept in safe condition. More-
over, as the majority opinion states, the language used in
the Stroble Case was qualified and limited in the later case
of Larson v. Railroad Co., *supra*. The court there says:
" A careful reading of Stroble's Case, and especially in the
light of other decisions of this court, shows it was not in-
tended to hold that the use and operation of railways con-
sists solely in the movement of trains as that term is com-
monly understood." In *Matson v. Railroad Co.*, 68 Iowa,
22, the negligence charged was that of one member of a con-
struction gang who dropped a stone upon the hand of his
fellow workman and it was held there was no right of recov-
ery against the company. In *Malone v. Railroad Co.*, 65
Iowa, 417, where two employés were engaged in removing ice
which obstructed the movement of the door of an engine
house and one of them was injured by the negligent act of
the other in prying the door off its hinges, no recovery was
allowed against the company. In *Hathaway v. Railroad
Co.*, 92 Iowa, 337, the injured employé made no claim of
right to recover under the statute. The holding in each of
the cited cases may well be approved and reaffirmed without
impeaching the soundness of the propositions advanced in
this dissent. With reference to the Haden Case, *supra,* the
opinion in which is criticised by the majority, we may for
the purposes of the argument admit that the statement there
found that " a person engaged in keeping in repair the track
of a railroad company is engaged in the business of operating
a railroad," is too broad; but it does not follow from such a
concession that the carelessness of a person so employed re-
sulting in injury to a co-employé from a moving train, is not
negligence in " any manner connected with the operation "
of a railway. In short, *any* negligence which increases or
aggravates the dangers peculiar to the operation of a railway

is negligence " connected with " such use and operation within the meaning of the statute.

Neither am I able to agree with the proposition that the trial court was " clearly right " in ruling out the statement made by the deceased immediately after his injury as to the manner in which he had been hurt. In my judgment the statement was unquestionably admissible under the rule adopted by this court in *Keyes v. Cedar Falls,* 107 Iowa, 509; *Alsever v. Railroad Co.,* 115 Iowa, 338; *Fish v. Railroad Co.,* 96 Iowa, 702; *Durkee v. Railroad Co.,* 69 Cal. 533 (11 Pac. 130, 58 Am. Rep. 562); *Railroad Co. v. Elliott,* 54 Neb. 299 (74 N. W. 627).; *State v. Jones,* 64 Iowa, 349; *State v. Driscoll,* 72 Iowa, 583; *McMurrin v. Rigby,* 80 Iowa, 322; *Keyser v. Railroad Co.,* 66 Mich. 390 (33 N. W. 867). See, also, *Hermes v. Railroad Co.,* 80 Wis. 590 (50 N. W. 584, 27 Am. St. Rep. 69); *Hooker v. Railroad Co.,* 76 Wis. 542 (44 N. W. 1085); *State v. Molisse,* 38 La Ann. 381 (58 Am. Rep. 181); *Commonwealth v. McPike,* 3 Cuch. (Mass.) 181 (50 Am. Dec. 727); *Railroad Co. v. Foley,* 94 Ky. 220 (21 S. W. 866); *Railroad Co. v. Buck,* 116 Ind. 566 (19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883); *Railroad Co. v. Leverett,* 48 Ark. 333 (3 S. W. 50, 3 Am. St. Rep. 230). And decidedly in point is *Peirce v. Van Dusen,* 78 Fed. 693 (24 C. C. A. 280, 69 L. R. A. 717).

For the reasons stated I think the judgment appealed. from should be *reversed.*