THOMAS F. MELODY, Appellee, v. THE DES MOINES UNION
RAILWAY COMPANY, Appellant.

Railroads:  NEGLIGENCE:  SAFE PLACE TO WORK:  EVIDENCE.  It is th⸗
1  master's duty to exercise reasonable care to provide his servant with
a safe place to work. This rule does not mean that he shall eliminate
all possible danger, but all such danger as he can remove or guard
against by the exercise of reasonable care. His duty in this regard
applies to railroad switching yards the same as to other places of
employment. The evidence in the instant case is held to require
submission of the question of defendant's negligence in permitting
snow and ice to accumulate in its switch yard, and upon the foot
boards of a locomotive used for switching, in such manner as to
render the place slippery and unsafe.            .    -  .

Same:  LIABILITY FOR NEGLIGENCE OF EMPLOYEES:  STATUTES.  Code
2  Section 2071, as amended, does not abolish the fellow-servant rule
in favor of any certain class of railway agents or employees; but
a person injured in consequence of the neglect of any -agent or
employee of the company, when in the performance of any mat-
ters connected with the operation of the railway, is within the
protection of the statute, regardless of whether the duty neglected
was magisterial in character or otherwise.            .

Same:  NEGLIGENCE:  OPERATION OF RAILWAY:  STATUTES.  The duty of
3  a railway company to keep its switch tracks and engines reason-
ably clear from snow and ice for the safety of employees, involves
a work connected with the use and operation of the railway, within
the meaning of Code Section 2071, and amendments thereto.

Same:  ASSUMPTION OF RISK:  PLEADING:  STATUTE.  Chapter 219 of
4  the Acts of the 33d General Assembly, relating to the duty of the
master to furnish his servants a safe place to work, and to the
assumption of risk by the servant, applies to a railway switchman
employed in a switch yard; and the defense of assumption of risk
can only be made available to the company, by pleading and prov-
ing that the danger was so apparent that a reasonably prudent man
would not have continued in the service.            .       .

Appeal:  ASSIGNMENT OF ERROR:  BRIEFS.  Where the vital questions
5  on appeal are clearly pointed out and argued, the briefs of counsel

will not be stricken or ignored, although some of the assignments of error are not referred to or treated in argument so that the court could properly attempt their consideration.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, MAY 13, 1913.

ACTION at law to recover damages for personal injury alleged to have been occasioned by the negligence of the defendant. There was a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Guernsey, Parker & Miller,* for appellant.

*Thomas A. Cheshire,* for appellee.

WEAVER, J.—The defendant was operating a line of railway in the city of Des Moines, and plaintiff was employed in its service as switchman. There is evidence tending to show that, for a period of two to three weeks prior to the accident, considerable quantities of snow and ice had accumulated in and upon the switching ground where plaintiff worked. At the place in question, and just outside of the track, a ridge of snow had formed or accumulated presenting a surface sloping toward the rail. Owing to the effect of steam from passing engines and the freezing weather which prevailed, this sloping surface had become icy. There was also evidence to the effect that there was hardened snow or ice upon the footboard or step of the switch engine operating in the yard. In the performance of plaintiff's duties as switchman, it became necessary to move certain cars from one location to another, and for this purpose he caused the engine to be backed to the east upon one track where it was coupled to two cars, and run thence westward past the "lead switch." At this point plaintiff dismounted from the engine to throw the

switch to allow the cars to be set back to the eastward upon another track. The switch being then thrown and the engine and cars being in motion toward the east, plaintiff attempted to mount the footboard, and in so doing his left foot slipped on the sloping ice ridge, while his right foot, which had been lifted to the footboard, slipped on the ice there accumulated, with the result that his grip upon the handhold, which he seized to assist his movement, was broken and he fell in such manner that his leg was crushed under the wheels of the locomotive or of the car attached thereto.

In this action he charges the defendant with negligence in failing to supply him with a safe place to work, in permitting snow and ice to accumulate in the yard and upon the footboard of the locomotive to the peril of switchmen in the performance of their duties, and in failing to remedy or remove such dangerous conditions. The defendant denies the charges of negligence and pleads contributory negligence and assumption of risk by the plaintiff.

It was the theory of the plaintiff upon the trial below that the case made by him brings him within the benefits of the recent legislation embodied in chapters 124 and 219 of the Acts of the Thirty-Third General Assembly. The trial court adopting this view did not submit to the jury the defendant's plea of assumption of risk, and instructed, in effect, that, if plaintiff had in other respects shown himself entitled to recover, contributory negligence, if any, on his part would operate only as a partial defense by which his damages should be diminished in proportion to the amount of negligence fairly attributable to him. The jury found for the plaintiff, and, from the judgment rendered on the verdict, defendant has appealed.

Various errors are assigned, but we shall confine our discussion of the case to the two or three propositions to which counsel have given chief attention in argument. Of other points made we have to say that a careful review of the record reveals no reversible error.

I. It is said that the evidence discloses no negligence on the part of the defendant. Upon this issue we are disposed to hold that the case was one for the jury. A switch yard is

1. RAILROADS: negligence: safe place to work: evidence.

a switchman's place of work. The nature of his duties requires him to traverse the yard in almost every direction, both day and night. Much of his movements has to do with the making up of trains, the coupling, uncoupling, assembling, and distribution of cars. He must move with celerity. The service is at best essentially dangerous, and he must be ever alert of eye and of ear to avoid being run over or caught and crushed between cars. He cannot always take careful note of his footsteps to make sure of his path, and within reasonable limits he must and rightfully may rely upon his employer to see that there are no traps or pits or obstructions into or over which he may fall to his injury, save only such as pertain to the proper and necessary preparation and equipment of the yard for its intended use. True, a railway company having no control over the laws of nature is not negligent simply because snow falls upon its yards; but, snow having fallen thereon, we cannot say, as a matter of law, that the company may without neglect of duty leave it there indefinitely and permit it to become worn or trodden into icy mounds, ridges, and slopes at places where its switchmen are required to go in the performance of their work, thus exposing them to the danger of slipping and falling to their serious injury. The duty of the employer is to exercise reasonable care to provide his employées a safe place to work, and is no less applicable to a switch yard than to a machine shop. True, the phrase "safe place to work" is a relative one. It does not mean the absolute elimination of all danger, but it does mean the elimination of all dangers which the exercise of reasonable care by the employer would remove or guard against. In the case before us it sufficiently appears that the conditions of which plaintiff complains were not the result of falling snow alone, but also of the use which had been made of the yard by the defendant whereby the

surface of the yard became uneven, hard, and slippery. Whether reasonable care on defendant's part would have prevented this source of danger or caused its removal before the plaintiff's injury is a question of fact and not of law.

II. Chapter 124 of the acts of the Thirty-Third General Assembly is amendatory of Code, section 2071. As amended, said section now reads as follows:

Every corporation operating a railway shall be liable for all damages sustained by any person, including employées of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employées thereof, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers, or other employées, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding. Nor shall any contract of insurance, relief, benefit or indemnity in case of injury or death, entered into prior to the injury, between the person so injured and such corporation, or any other person or association acting for such corporation, nor shall the acceptance of any such insurance, relief, benefit, or indemnity by the person injured, his widow, heirs, or legal representatives after the injury, from such corporation, person, or association, constitute any bar or defense to any cause of action brought under the provisions of this section, but nothing contained herein shall be construed to prevent or invalidate any settlement for damages between the parties subsequent to injuries received. In all actions hereafter brought against any such corporation to recover damages for the personal injury or death of any employée under or by virtue of any of the provisions of this section, the fact that the employée may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employée: Provided, that no such employée who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier or corporation of any statute enacted for the safety of employées

2. SAME: liability for negligence of employees: statutes.

contributed to the injury or death of such employée; nor shall it be any defense to such action that the employée who was injured or killed assumed the risks of his employment.

It is the claim of plaintiff, and was so ruled by the trial court, that, if the allegations of fact in the petition are supported by the evidence, the statute above quoted is applicable. Appellant takes issue with this proposition. The objection, if we understand counsel, is substantially as follows: That this statute is intended to abolish the fellow-servant rule in favor of a certain class of railway employées, and that the rights created by the statute and its various amendments are available only in cases where the negligence charged is the negligence of a fellow servant. Starting from this basis, it is next pointed out that the negligence charged by this plaintiff is an alleged failure to perform a magisterial duty, a case to which the fellow-servant rule never had any application, and therefore is not within the scope of the statute. The correctness of this conclusion is of course dependent upon the soundness of the premise. Is the statute applicable only to cases in which, but for its enactment, the fellow-servant rule could be successfully invoked by the employer? Let us see what the distinction thus contended for means in practical effect. It means that, when the negligence complained of is the direct or immediate act or omission of the employer itself, the injured person may be met with all the ancient common-law objections and defenses · (fellow-servant rule, contributory negligence, and assumption of risk); but, where the negligence is indirect (an act or omission of a fellow servant, even though in violation of an express order or rule of the employer and in spite of all possible care on the employer's part), the objections and defenses above mentioned are taken away, and such employer is charged with full liability for the resulting injuries. It is difficult, indeed, to suggest or imagine why the Legislature should offer this claimed premium or shield for the more direct, primary, and culpable wrong of the employer itself, and deny it where the wrong is indirect and

secondary only.  A result so illogical and essentially unjust ought not to be sanctioned by the courts, unless the statute clearly commands it in express terms or by necessary implication.  We do not so read this statute.

The distinction sought to be drawn between the corporation and its agents and employées is unwarranted.  A corporation cannot act; it can perform no duty; it can neglect no obligation save by and through its agents and employées. It is an organization without volition or power to act or to refuse to act except as it lives, moves, and has its being in and by such agents and employées.  If its magisterial duty is performed, it is only because its agents and employées have exercised the necessary care with respect thereto.  If such duty be neglected, it is only because its agents and employées have failed in their duty of care and prudence.  The duty of making and keeping a switch yard in reasonably safe condition is of course a magisterial obligation.  It is also a continuing obligation. . It is of necessity committed to the hands of agents, foremen, and bosses, who with their men are on the ground making needed improvements, repairing defects, and removing obstructions.  If the company is chargeable with negligence in this respect, it is because these men are derelict in the performance of their duties, and one who suffers injury thereby is injured ''in consequence of the neglect of the agents and employées'' of the company for whom they act or by whom they are employed.  The distinction for which appellant contends has never been recognized or approved by this court in any of the very numerous cases of this class which have come to it since the enactment of Code, section 2071.  On the contrary, the very clear trend of the decisions is in the other direction.  Representative of the cases in point is *Locke v. Railroad Co.*, 46 Iowa, 113.  In that case the negligence charged was the failure of the company to keep in repair a certain bridge which gave way under a passing train and injured one of the trainmen.  This was a neglect of a magisterial duty, even though the immediate

fault was that of the employée to whom the actual work of repair had been committeed by the company. Applying the statute to the circumstances so shown, the court there says, "If, therefore, owing to the negligence of any employée whose duty it was to 'look after the bridge and keep it in repair,' the same became out of repair, and in consequence thereof the accident occurred which resulted in the death of the plaintiff's intestate, the defendant is liable." We are still satisfied with the correctness of the position there taken and adhere to the conclusion that a person injured in consequence of the neglect of any agent or employée of a railway company in matters connected with the operation of such railway is within the protection of Code, section 2071, without respect to the question whether the duty so neglected is or is not magisterial in character.

III. It is further argued that the case does not fall within the scope of Code, section 2071, because the negligence complained of was not "in any manner connected with the use or operation of the railway" on or about which the plaintiff was employed. Much reliance is placed upon *Dunn v. Railroad Co.*, 130 Iowa, 580, supporting this objection. In the *Dunn* case, a section gang being engaged in work upon or along a railway track, one of the hands was injured by the negligence of another who left an iron bar where it was struck by a passing train and hurled through the air. It was there held by a majority of the court that the negligence so shown was not connected with the use and operation of the road within the meaning of the statute. Though pronounced by a divided court, the correctness of that decision and its authority as a precedent, where similar issues are involved, may, for the purposes of this case, be accepted as standing unchallenged. We think, however, that the precedent so established is not controlling upon the question arising on the record now before us. Let us suppose in the *Dunn* case that the section hands had negligently failed to spike a rail, thus wrecking the

3. SAME: negligence: operation of railway: statutes.

engine and killing the engineer or fireman. Would any lawyer contend or court hold that the negligence in such case was not ''in any manner connected with the use or operation of the railway?'' To so hold would be to say that language has lost its meaning, and constitutional legislation imposes no obligation which courts are bound to respect. The negligence charged against the appellant herein is like that in the illustration above employed rather than that which we had to consider in the *Dunn* case. Here the plaintiff was clearly employed in service directly connected with the operation of the railway. The defects or dangers of which he complains were such as rendered that operation more than ordinarily perilous. It would be illogical, not to say absurd, to commit ourselves to the proposition that a negligent act or omission by which the movement of engines and cars is made increasingly dangerous is not ''negligence in any manner connected with the use and operation of a railway.'' The same question was considered in the *Locke* case, already cited, where the negligence charged was in the company's failure to keep in repair a bridge over which trains were operated, and we there expressed the view that the failure of the employée to whom this work was assigned to properly attend to it was ''directly connected with the use and operation of the railway.'' There is no reasonable grounds on which we can say that the maintenance of safe switch yards is any less the duty of the company than the maintenance of safe bridges, or that one is more directly connected with the use and operation of the road than the other. We have no decision or precedent requiring us to so hold, and we are unwilling to do so.

Without further prolonging this discussion, we conclude that the trial court did not err in holding the case to be within the terms of Code, section 2071, as amended by the Thirty-Third General Assembly.

IV. By chapter 219 of the Acts of the Thirty-Third General Assembly it is provided:

That in all cases where the property, works, machinery, or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish reasonably safe machinery, appliances or place to work, the employée shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employée may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of such employée to make the repairs, or remedy the defects. Nor shall the employée under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment. And no contract which restricts liability hereunder shall be legal or binding.

4. SAME: assumption of risk: pleading: statute.

Stated with somewhat less involution, it is thus provided that, where an employer owes to an employée the duty of furnishing him a reasonably safe place to work, the latter will not be held to have assumed the risk of the former's negligence in this respect simply because he remains in such service, unless the danger in so doing is so patent and imminent that a reasonably prudent person would not continue therein. The statute makes no distinction between employers so far as relates to the particular line of industry in which they employ labor. It is expressly made applicable "in all cases" where the duty exists to furnish a safe place to work and the employer's "property, works, machinery, or appliances are defective or out of repair." A railway company is an employer of labor and, subject to certain exceptions recognized by the common law and suggested in the statute, is charged with the duty to provide its employées with a reasonably safe place to work. Unless, therefore, we are to ingraft an exception upon the statute, we must hold that a plea of assumption

of risk because of plaintiff's continuance in the employment is available to a railway company only as it is available to every other employer, and that is by pleading and proving that the peril to which plaintiff was exposed was so apparent and threatening that a reasonably prudent person would have abandoned the service. The switch yard is the employer's "property." It is the switchman's "place of work." These are among the expressly mentioned items in which the existence of defects or want of repair constitutes a risk of injury which is not assumed by the employée. There was therefore no error in the refusal of the trial court to submit the plea to the jury.

These statutes have evidently been enacted in deference to a very general conviction that, under the greatly changed conditions of modern times, some of the rules and principles of the law of negligence having their origin far in the past, and especially such as relate to the reciprocal duties of master and servant, are ill adapted to the accomplishment of just results in many of the cases coming up for judicial consideration. We need not here discuss the justice or injustice of this view. It is enough that it is widely entertained and the Legislature has enacted statutes to give it effect.

So long as these enactments are within constitutional limitations, courts are bound to give them effect according to their terms. The statutes here in question are not obscure in expression, their purpose is scarcely open to question, and, giving their language its most obvious construction and meaning, we are irresistibly led to the conclusions above announced.

V. It is contended on the part of appellee that appellant's brief is not prepared in accordance with the rules of this court, and does not properly raise the questions upon which we are asked to pass. The objection is in some respects well taken (that is to say, of the fifty or more assignments of error some are not so referred to or treated in the argument that we can properly attempt their consideration); but the central

5. APPEAL: assignment of error: briefs.

and vital questions to which we have referred in this opinion are quite clearly specified and argued, and there is no such flagrant disregard to the rules as would justify us in striking or ignoring the briefs of counsel.

No sufficient reason appearing for ordering a new trial, the judgment of the district court is *Affirmed.*