York, Administratrix, Respondent, vs. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

*February 14—June 3, 1924.*

*Federal Employers' Liability Act: Death of employee: Brakeman riding dump car: Platform covered by ice and snow: Negligence of railroad: Proximate cause: Assumption of risk: What constitutes: Ordinary risks: Knowledge of employee: Question for jury: Form: Evidence: Sufficiency.*

1. Where the dangerous condition of an employee's place of work is the result of a combination of natural causes, for which the master is ordinarily immune from liability, and artificial causes created by acts of the master or his employees, the issue of negligence is for the jury. p. 115.

York v. Chicago, M. & St. P. R. Co. 184 Wis. 110.

2. Under the federal Employers' Liability Act (U. S. Comp. Stats. §§ 8657–8665), a railroad company is liable if a servant's death results wholly or partly from the negligence of any of its officers, agents, or employees or any defect or insufficiency in its cars due to its negligence. p. 116.

3. Under such act a railroad company may be liable for the death of a brakeman who fell underneath the cars from a cinder dump car, put in use with an accumulation of cinders covered with ice and snow on the rear platform on which he was standing while performing his duties, when such condition was not solely the result of natural causes; and the question as to the negligence of the railroad is for the jury. p. 117.

4. An employee, by his contract of employment, assumes the ordinary risks of the service and cannot recover for injuries · resulting solely from such perils. p. 117.

5. The question as to the assumption of risk is ordinarily for the jury, unless the facts present a situation so plain that intelligent men would not draw different conclusions. p. 117.

6. So, also, the question as to whether the brakeman assumed the risk of falling from the car platform, where its condition was due largely to the negligence of the company's employees in pouring water on the cinders when the cars were loaded, is for the jury, he having a right to rely, at least to some extent, on the company's obligation to furnish him with a reasonably safe place to work. p. 120.

7. Assumption of risk involves not only knowledge of the risk, but a reasonable opportunity to ascertain its nature and an appreciation thereof; and in this case a finding of the jury that deceased did not know and appreciate the dangerous condition of the platform when he got on it, and had no reasonable opportunity to get into a safer position before he fell, is *held* to be sustained by the evidence. p. 120.

8. An employee does not assume risks, not naturally incident to the occupation, arising from the employer's failure to exercise due care to provide a safe place of work and suitable and safe appliances, until he becomes aware of the defect or disrepair or the risks arising therefrom, unless they are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them. p. 121.

9. In this case the burden of proof was on plaintiff to show that defendant's negligence was the proximate cause of the death of the deceased. p. 122.

10. The proximate cause of death may be shown by both direct and circumstantial evidence; and in the absence of evidence to the contrary, it must be assumed that the deceased exercised precaution for his own safety. p. 122.

11. The finding of the jury that the negligence of the railroad
    company was the proximate cause of the death of deceased
    is *held* to be sustained by the evidence.    p. 123.
12. The question of assumption of risk should have been submitted
    to the jury in the form of a question whether an ordinarily
    prudent person with the experience of deceased in riding
    such cars, under all the circumstances existing at the time,
    would have observed and appreciated the danger in riding in
    the position assumed by him.    p. 123.

APPEAL from a judgment of the circuit court for Colum-
bia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The accident which resulted in the death of York, plaint-
iff's intestate, occurred on the 13th day of February, 1922,
at about 5:30 o'clock p. m. of that day. At Columbus,
Wisconsin, the defendant maintains two main tracks ex-
tending east and west, the north track being used for its
west-bound traffic and the south track for the east-bound.
To the north of the west-bound track, and to the south of
the east-bound track, are two passing tracks, each about one
mile in length and connected with the main tracks by proper
switches.   Prior to the date of the accident some fifteen
empty cinder dump cars had been left upon the south pass-
ing track, and while York, who was the head brakeman of
a train consisting of an engine and fifty-six freight cars
and a caboose, was proceeding from Milwaukee to Portage,
directions were received by the engineer to pick up these
cinder dump cars and proceed with them to Portage.   The
freight cars were left on the west-bound main track between
the east switch leading to the north passing track, and the
west switch leading from the north passing track to the
west-bound main track, and, the engine being disconnected,
proceeded westward on the west-bound main track to the
cross-over switch, and thence onto the east-bound main
track to the west switch leading onto the south passing
track, thence east onto such passing track, where it was
connected with the cinder dump cars.   At the time the en-
gine left the cross-over switch York alighted to flag the

York v. Chicago, M. & St. P. R. Co. 184 Wis. 110.

east-bound main track. The engine and cinder cars there-upon proceeded onto the east-bound main track, and from thence west to the cross-over switch and thence onto and west on the west-bound main track, beyond the cross-over switch. York then signaled the engineer to back up, and took a position on the rear platform of the most easterly cinder car, having hold with one hand of the brake-beam and with the other hand holding his lantern. During this time the conductor took a position near the west switch of the north passing track, awaiting the return of the engine with the cinder dump cars, so that they could be connected with the balance of the cars and the caboose. When the train proceeded east on the west-bound track and while crossing Ludington street, York was seen in the position last described, by the crossing tender. The conductor observed the engine and the cinder dump cars coming towards him, saw the light from York's lantern, but could not see York. The conductor, noticing something underneath the cars, immediately signaled the engineer to stop the train, and it was then ascertained that York had fallen from the train and had been killed. Except as above mentioned there is no evidence as to how the accident actually happened.

The box on the cinder cars is about three feet in height. At each end of the car there is a platform about eighteen inches in width, extending the width of the car, used by the members of the crew in the discharge of their duties. There was no running-board on the cinder cars. On the platform on which York was standing at or about the time of the accident there was an accumulation of about five inches of frozen cinders in the center, sloping down towards each end of the car. On top of the frozen cinders was a layer of about one-half inch of snow.

It also appears from the undisputed evidence that these cinder cars had been loaded at Portage and that the cinders were used for ballast on the roadbeds in the vicinity of Columbus; that when the cinders are loaded onto the cars a.

stream of water is applied so as to protect the cars from damage by fire. There is also evidence tending to show that the condition of the platform where York was standing at the time of the accident was caused at the time of the loading of the cars at Portage. It is conceded by both parties that at the time of his death York was employed in interstate commerce.

The case was submitted to the jury on a special verdict, and the jury found: (1) that the defendant failed to use ordinary care in putting the cinder dump on which York was riding in use with the accumulation of frozen cinders on the platform at the back end of the car; (2) that such want or ordinary care was the proximate cause of York's death; (3) that York at the time he got onto the platform did not know and appreciate its condition; (4) that after getting onto the platform and before he fell, York did not have reasonable opportunity to get into a safer position; (5) that York was not thrown from the car by an operation of the air brake on the engine; (6) that the engineer did not fail to exercise ordinary care in the application of the air at said time; (9) that there was no want of ordinary care on the part of York proximately contributing to his death.

For the appellant there were briefs by *H. J. Killilea, Rodger M. Trump,* and *J. L. Mahoney,* all of Milwaukee, attorneys, and *Carl S. Jefferson* of Chicago, of counsel, and oral argument by *Mr. Trump.*

For the respondent there was a brief by *Stroud & Stroud* of Portage and *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *Martin L. Lueck* and *P. C. Stroud.*

The following opinion was filed April 8, 1924:

DOERFLER, J. By its answer to the first question of the special verdict the jury found that the defendant failed to exercise ordinary care in putting the cinder dump on which York was riding in use with the accumulation of frozen cinders on the platform at the back end of the car. De-

fendant's counsel claim that, conceding the condition of such platform as above described, it must be held as a matter of law that their client was free from negligence; that it would be unreasonable and impracticable to require the company to make periodical inspections of these platforms and to remove the deposited cinders, together with the ice and snow, therefrom. On the other hand, plaintiff's counsel contend that the condition of the platform at the time of the accident presented a proper jury issue on the subject of negligence, and that, the jury having answered the first question favorably to the plaintiff, the trial court properly sustained the jury's verdict in that behalf.

The condition of the platform was not solely the result of natural causes. During a rainfall at this period of the year the platform naturally becomes slippery from an ensuing frost, while during a snow-storm snow will be deposited upon the platform, which, when the thermometer rises above the freezing point, is liable to melt, and upon frost recurring thereafter is liable to produce a slippery condition. These are natural and ordinary conditions for which the company ordinarily is immune from the charge of negligence under the authorities. Where the condition, however, is not the result of natural causes, but is due to the acts of the defendant or its employees, a different situation arises. The conditions, however, may be the result of a combination of natural and artificial causes, and it appears that when such a combination exists, and where the artificial cause is created by the acts of the defendant or its employees, a proper jury issue on the subject of negligence is raised. See *Salzer v. Milwaukee,* 97 Wis. 471, 73 N. W. 20; *West v. Eau Claire,* 89 Wis. 31, 61 N. W. 313; *Melody v. Des Moines U. R. Co.* 161 Iowa, 695, 141 N. W. 438.

As above stated, water is poured over the cinders where the cars are loaded, and there is testimony in the case from which the jury could readily infer that the frozen condition of the cinders and the ice on the platform resulted from the

overflow of the water onto the platform.   It is also possible that the ice in and around the cinders and the platform was at least in part caused by the melting of the snow falling on the top of these cinders.   In either event a highly danger-ous condition may result, for which the defendant may be held liable.   This platform was designed largely for the purpose of enabling the defendant's employees, and par-ticularly the brakemen, to perform their duties.   Cinders in their natural condition are not slippery; on the contrary, they tend to prevent slipping.   These cinders were deposited on the platform, which was but eighteen inches in width, so that in the center thereof nearest the box of the car they were five inches in height.   From such point there was a gradual pitch towards the rear end of the platform and towards the sides of the car.   The surface was broken, irregular, and uneven.   The cinders were covered with ice and were frozen together, and it requires no comment that such a condition is highly dangerous to employees who in the discharge of their duties are required to occupy a posi-tion on such platform.   The half inch of snow covering the cinders created a rather treacherous condition which added materially to the danger, for it prevented a full disclosure of the situation existing underneath.   The cinders them-selves consisted of individual pieces, more or less firmly frozen together, so that the application of a weight like that of a human body to the surface, combined with the movement of the car, would have a tendency to cause them to give way and to produce slipping or falling.

The federal Employers' Liability Act was enacted by Congress in order to minimize accidents.   Under such act the company becomes liable where a death results in whole or in part from the negligence of any of the officers, agents, or employees of the company, or by reason of any defect or insufficiency due to its negligence in its cars, etc.

In *Calhoun v. G. N. R. Co.* 162 Wis. 264, 156 N. W. 198, the defendant was held liable for negligence where the em-

ployee sustained injury by stumbling against a running-board which projected over and above an adjacent running-board. While the condition of these running-boards in the *Calhoun Case* presented a situation inimical to the safety of the employees required to perform their duties thereon, the situation presented in the instant case was infinitely more dangerous. No case similar in its facts to the instant case is cited by counsel and we have been unable to find one. However, if the federal statutes designed for the protection of human life and limb are to be given any force or effect, we must hold that the situation here presented is one clearly coming under such federal statutes, for which the defendant may be held responsible. The issue was clearly one for the jury.

Defendant's counsel strenuously contend that under the record it must be held that York assumed the risk with respect to the condition of the platform. The question of assumption of risk was submitted to the jury by questions 3 and 4 of the special verdict and were answered adversely to the defendant.

"An employee by his very act of entering the service of the employer—by his very contract of employment—assumes the 'ordinary' risks of the service or such as usually are incident thereto, and if he be injured solely by reason of those perils he is not entitled to recover." 18 Ruling Case Law, 671; *Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135; *Bormann v. Milwaukee,* 93 Wis. 522, 67 N. W. 924.

The question of assumption of risk is ordinarily one for the jury "unless the facts are inconsistent and present a situation so plain that intelligent men would not draw different conclusions." 18 Ruling Case Law, 676; *Guinard v. Knapp-Stout & Co. Company,* 90 Wis. 123, 62 N. W. 625.

It appears from the record that York had been employed as a freight brakeman for the defendant company a number of years prior to the accident. To what extent he was

familiar with the condition of cars like these dump cars does not appear, nor is there anything to show that York had ever met a situation on the platform of a car similar to the one here involved. The deceased must be charged with knowledge of the usual and ordinary risks attendant upon and connected with his employment, and such risks, under the law, he assumed. Among such risks may be mentioned the boarding of cars while in motion, his passing over the top of cars on the running boards, while in motion, the crossing of tracks in the employer's yards, and numerous other similar risks. There are few occupations in the industrial life of a community that subject employees to greater danger than those which constantly confront railroad employees in the discharge of their duty. The movement and operation of a large train of cars require an observation of the rules of the company and mutual co-operation among the employees in order that the work may be accomplished with dispatch and promptness and to avoid large economic loss. There is little time, in the ordinary movement of a large freight train, and particularly in the making up of a train, for an employee to make inspection of the various parts of the train on which he is required to perform his duty. The operation of a transcontinental railway system like that of the defendant constantly brings the brakemen in touch with a large number of cars, not only of the defendant company but of other companies whose cars may be dispatched over its line. It would be a physical impossibility for any employee of a railroad company to have full knowledge of and to be conversant with the conditions existing on all of the cars. The condition of the platform upon which York was riding immediately prior to his death was one, as has already been shown, connected with unusual hazard. There is nothing in the evidence to show that prior to his boarding this car he had ever come in contact therewith, or that it was usual for cars to be left in such dangerous condition.

This is not a case, as intimated by counsel for the de-

fendant, where a few cinders or pieces of coal had been left on the platform; on the contrary, the record discloses a platform unusually narrow for an employee to perform his duties upon, upon which had been deposited a large volume of rough cinders of various forms and shapes, frozen together. When the last cinder dump had passed the switch on the west-bound track York was on duty signaling the engineer to back up. There was nothing for York to do but to take his position upon this dangerous platform, so that he might signal to the conductor the approach of the train. The accident happened while darkness was rapidly approaching, as appears from the fact that York held in his hand his signal lantern. It is difficult to determine what position, under the circumstances, would have been the safest position for York to assume. There was little time for investigation and his duties were imminent. He took the position on the platform next to the brake-beam, evidently believing that this would afford him not only the best opportunity to signal, but also for his own protection and safety. Immediately upon boarding this car, pursuant to the signal theretofore given by him, the engineer backed his engine ánd the dump cars east on the west-bound main track, and while the car was in motion any movement on the part of York, under the circumstances, would have been connected with considerable risk and danger. To ascertain the exact situation and the danger which presented itself was nigh impossible under those circumstances. As has already been said, the surface of the cinders was covered with half an inch of snow, which added to the difficulties of ascertaining the condition underneath. Under such facts and circumstances we are requested to hold, in accordance with the view of defendant's counsel, that York either knew and was aware of the dangerous condition or that by the exercise of ordinary care he could have ascertained such condition. The contention of defendant's counsel does not appeal to us as having any merit.

Under the provisions of the federal Employers' Liability

Act, it was incumbent upon the defendant to furnish to York a reasonably safe place in which to perform his duties, and he had, under the circumstances, a right to believe that the place furnished him was reasonably safe. The risk which York assumed was not an ordinary risk, but was created largely by artificial means, through the negligence of defendant's employees. Such negligence greatly increased the hazard, and, to say the least, the question of assumption of risk was one for the jury.

In *Nadau v. White River L. Co.* 76 Wis. 120, 131, 43 N. W. 1135, this court cites with approval what is said in *Swoboda v. Ward,* 40 Mich. 420, 424:

"Where the servant shows that the injury he received was in consequence of an increased risk,—one not ordinarily incident to the employment,—growing out of the master's negligence, the burden of proof is upon the master to show that the servant knew of and understood the increased dangers."

In *Graber v. D., S. S. & A. R. Co.* 159 Wis. 414, 150 N. W. 489, it is said:

"Assumption of the risk includes only such as the employee, expressly or impliedly, contracts to take upon himself because of being ordinary incidents of the particular business as ordinarily carried on, or as carried on in the particular case to his knowledge or under such circumstances that reasonable attention to his situation would afford him such knowledge."

There is involved in the question of assumption of risk not only the question of knowledge, but a reasonable opportunity to ascertain the nature of the risk and also an appreciation of the risk. There is no evidence in the case whatever showing that York, prior to boarding this platform, had any knowledge whatsoever of its dangerous condition; furthermore, there is no evidence in the case that he had an opportunity to determine for himself whether the platform, as a matter of fact, was in a dangerous condition. After assuming his position upon the platform he was engrossed

in the performance of his duties. It was difficult and dangerous for him to attempt to change his position while the car was in motion, because any movement on his part on the surface of the snow and frozen cinders would have been inimical to his safety. Even an inspection or investigation of the platform would have been connected with considerable hazard, if we assume that by the use of the signal lantern the dangerous condition would have been disclosed. We are clearly of the opinion that the answers of the jury to the questions of the special verdict involving the matter of assumption of risk are fully sustained by the evidence.

Defendant's counsel rely largely upon *Jacobs v. Southern R. Co.* 241 U. S. 229, 36 Sup. Ct. 588; *Seaboard Air Line Ry. v. Horton,* 233 U. S. 492, 34 Sup. Ct. 635; and *Southern Pac. Co. v. Berkshire,* 254 U. S. 415, 41 Sup. Ct. 162. In the *Jacobs Case* an employee of the company attempted to board a moving engine with a vessel of water in his hand and stumbled over a pile of cinders. The employee had knowledge of the cinders, but had momentarily forgotten the existence of the same. In that case the court held that having admitted knowledge of the conditions he assumed the risk.

The *Seaboard Air Line Case* might have been cited to advantage by plaintiff's counsel. It is there held that:

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily pru-

dent person under the circumstances would have observed and appreciated them."

To such decision we can find no criticism, and the law thus declared appears to be the recognized law upon the subject, generally.

In the *Southern Pac. Co. Case* it was held that the engineer who sustained injury had knowledge of the defects complained of, and it was therefore held that he assumed the risks as a matter of law. The other cases cited by defendant's counsel are all readily distinguishable from the instant case. We are therefore constrained to hold that the question of plaintiff's assumption of risk presented a proper jury issue, and, the answers of the jury being sustained by the evidence, the verdict in that behalf cannot be disturbed.

In the answer to the second question of the special verdict the jury found that defendant's negligence was the proximate cause of York's death. Defendant's counsel insist that the evidence does not sustain this answer of the jury in the special verdict; that the answer of the jury rests upon bare possibilities; and that in answering this question the jury entered the realm of conjecture and speculation. On this question the burden of proof was upon the plaintiff. Proximate cause may be shown both by direct and circumstantial evidence. There is no direct testimony of a witness in this case disclosing the exact manner in which the deceased came to his death. It does appear, however, that as York passed the Ludington street crossing he was seen by the crossing tender occupying the position above described, standing next to the brake-beam, with one hand thereon, and with the other hand offering a salute with his signal lantern. Immediately thereafter, as the car on which he was riding was approaching the west switch of the north passing track, where the conductor was stationed, he was found under the train, dead. The condition of the platform has been fully established and is undisputed in the evidence. True, there is a possibility of York having had a sudden

York v. Chicago, M. & St. P. R. Co. 184 Wis. 110.

stroke of apoplexy or of heart failure. There is no evidence in the case, however, which would support such a claim. It is also possible that his hold upon the brake-beam may have been suddenly released and that thereby he lost his balance and was precipitated under the train. Such contentions, however, are based merely upon bare possibilities and are highly conjectural and speculative. In the absence of evidence to the contrary, it must be assumed that York exercised precaution for his own safety. The most important outstanding fact, however, in the case is the actual physical condition of the platform which resulted from the negligence of the defendant, and it was not only logical for the jury to conclude that this negligent condition was the cause of the injury, but such conclusion is based upon reasonable probability. The proximate cause in the instant case was shown with greater certainty and more definiteness than that shown in the *Calhoun Case* above referred to.

Under the view above expressed on the various issues presented, it will be unnecessary for us to consider plaintiff's claim that the defendant was also negligent in violating the federal Safety Appliance Act. This disposes of all of the contentions of defendant's counsel, both in the brief and in the argument.

While the elements involved in the question of assumption of risk were substantially included in the questions submitted by the court in the special verdict, we would suggest the propriety of framing the question in accordance with the one requested by defendant's counsel, viz.: "Would an ordinarily prudent person with York's experience in riding cinder cars, under all the circumstances existing at the time, have observed and appreciated the danger to himself in riding in the position which he had assumed on the end of the car?"

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 3, 1924.