### HOCKING VALLEY RY. CO. v. WHITAKER.

(Circuit Court of Appeals, Sixth Circuit. June 9, 1924.)

No. 4019.

**Master and servant ⊙⟝204(1)—Risk assumed under federal act.**

Under Employers' Liability Act (Comp. St. §§ 8657–8665), an employee assumes the risk of an accidental injury, incident to the employment, not caused by the negligence of the employer or of a fellow servant.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Action at law by Van B. Whitaker against the Hocking Valley Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Fred C. Rector, of Columbus, Ohio (Wilson & Rector and F. C. Amos, all of Columbus, Ohio, on the brief), for plaintiff in error.

Herman J. Nord, of Cleveland, Ohio, and David F. Pugh, of Columbus, Ohio (Skiles & Skiles, of Shelby, Ohio, and Pugh & Pugh, of Columbus, Ohio, on the brief), for defendant in error.

Before DENISON and DONAHUE, Circuit Judges, and TUTTLE, District Judge.

PER CURIAM. Whitaker brought action to recover damages from the Hocking Valley Railway Company for personal injuries sustained by him while in its employ. At the time of the accident resulting in the injury, plaintiff and defendant were both engaged in interstate commerce. Whitaker's duties consisted in transferring freight to and from cars at Marion, Ohio. At the immediate time of the injury he was in a freight car in which there were three large steel grave vaults, standing side by side. It became necessary, in the course of his employment, to move the center vault about 14 inches toward the middle, in order to get other freight out of the rear end of the car. In doing this work it was necessary to use a truck to raise the front end of this vault, which weighed about 500 pounds, a short distance from the floor, so that it could be pushed and pulled forward. De Weese and Gilmore, who were fellow employés of plaintiff, were assisting him in this work. De Weese had gone to the rear end of the vault to push forward when the front end was raised. Gilmore shoved the metal or shear edge of the truck under the front end of the middle vault and

---

raised it some distance from the floor, so that the plaintiff could take hold of one of the handles and assist in pulling it forward. When plaintiff took hold of this handle, the vault slipped from the truck, and, in falling, caught Whitaker's hand and pulled it down between the vaults, seriously injuring him.

The plaintiff averred that the defendant railway company and his fellow employés were guilty of negligence in the following particulars: First, that De Weese failed to assist in preventing the vault from falling from the truck; second, that the railway company was guilty of negligence in failing to equip the truck with burlap, or other means to prevent the vault from slipping off; third, that De Weese, who was in position to see and know the vault was about to slip off the truck, wholly failed to warn or notify plaintiff of the danger; fourth, that Gilmore was guilty of negligence and carelessness in failing to place the truck properly under the end of the vault; that the truck was negligently placed on an angle and near the corner thereof, which negligent placing of the truck caused the vault, when elevated, to slip and fall toward and against the vault next to it, thereby causing the injury to plaintiff.

The answer denied negligence on the part of defendant, and averred negligence of plaintiff, contributory negligence, and assumption of risk. The reply denied the affirmative defenses. At the close of plaintiff's evidence defendant moved for a directed verdict, which motion was overruled. The defendant introduced no evidence. A verdict was returned in favor of the plaintiff in the sum of $3,891. A motion for new trial was overruled, upon condition that Whitaker remit $1,000 from the verdict. Whitaker complied with this condition, and judgment was entered in his favor for $2,891.

The plaintiff and Gilmore, his coemployee, were the only witnesses called by the plaintiff to establish the negligence charged in the petition. Neither of these witnesses testified that the truck was improperly constructed for the purposes for which it was used, or to any facts that would tend to prove that it was negligence on the part of the defendant not to equip the blade or shear end of the truck with burlap, or other means to prevent the vault from slipping off the same. Nor does it appear that the court, in its charge, submitted this averment of negligence to the jury.

Whitaker testified: That he did not see "De Weese do anything besides hold his hands on the vault in a pushing position. He didn't push. Gilmore holloed 'All ready,' and the vault went off on the other vault." That he was looking toward De Weese, with his back to Gilmore, and could not see what Gilmore was doing. Gilmore testified that De Weese "put his hands on the vault to push forward, * * * but whether he pushed, or not, I couldn't say." He further testified that, "just as I made a little angling position and said 'Ready,' why the vault slipped off the truck. * * * It slipped to the right as quick as you could say 'scat.'" It therefore clearly appears from this evidence that De Weese was in position, ready to do his part, whenever the command was given, that he was not expected to push until Gilmore said "Ready," and that when Gilmore gave the word the vault immediately

slipped from the truck, before De Weese had time to push, or any opportunity whatever to notify Whitaker of his danger.

It is averred in the petition that Gilmore was guilty of negligence and carelessness in failing to place this truck properly under the end of the vault, but, on the contrary, negligently placed it on an angle and near the corner of the truck, thereby causing the vault to fall. Whitaker, who was standing beside Gilmore, testifies that, when Gilmore placed the truck under the corner of the vault and raised it a few inches, he (Whitaker) slipped a block or stick of wood under the vault, so that Gilmore could get the truck further under it; that after this was done Gilmore raised the vault upon the truck about a foot or 14 inches. He therefore had full opportunity to see how Gilmore placed this truck under the vault, but he does not testify that it was placed on an angle and near the corner thereof, as alleged in his petition. He further says that after the vault was raised by Gilmore he took hold of the handle, and that after he took hold of the handle he could not see what Gilmore was doing. He further testified that before this occurrence he had handled vaults of this kind in the same way.

Gilmore testifies positively that he raised the vault a little and Whitaker put a stick under it, so he could get the shear of the truck under the vault the full length of the shear or shoe; that he then put the truck straight under the vault before he attempted to raise it. This is the only evidence in this record in reference to the manner in which this truck was placed under the end of the vault, and does not establish, but, on the contrary, tends to disprove, the averment in the petition that Gilmore was guilty of negligence and carelessness in "placing this truck on an angle and near the corner thereof."

It is claimed, however, that the evidence establishes the fact that, after the truck had been properly placed in position and the vault had been elevated to a distance of 12 or 14 inches, Gilmore caused or permitted the truck to slip into an angling position, thereby causing the vault to fall and injure plaintiff. It is further insisted that this variance beween the allegations and the proof is immaterial. While there is no allegation of negligence in this respect, yet for the purpose of this case it may be conceded that this variance is not fatal. There is, however, no evidence in this record tending to prove that Gilmore was guilty of any negligence whatever in permitting this truck to slip into an angling position. In reference to this, Gilmore, the only witness that testified on this subject, says that when he bore down on the truck to raise the vault "there was something behind me, off angling a little bit. I never looked to see what that was, and just as I made a little angling position and said 'Ready,' why the vault slipped off the truck."

He further testified upon cross-examination that this was the usual way in which these trucks were moved; that by reason of longer experience he took the lead in moving the heavy freight; that it was unnecessary to tell De Weese or Whitaker where to go; they knew their places, because they had moved these vaults, a good many of them, before"; that if you are not careful there is danger of the vault slipping off the truck; that he knew that at the time and was "watching close"; that just as he "lifted down with the truck something struck

him in the back, or there was something there, he did not look to see what it was hit him; I didn't want to lose my hold; I kept watching my hold, but I came down a little angling to get away, so I could hold that vault up."

It is clear from this evidence that Gilmore was exercising due care and caution in the effort to accomplish this work with safety to himself and his fellow employés, and that the angling of this truck, if it did in fact angle, after it was placed in proper position, was caused by reason of his coming in contact with some obstruction back of him, and not through any carelessness or neglect on his part. This action being under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), an accident not caused by the negligence of the employer or of a fellow servant is a risk incident to the employment and assumed by the employé. Upon this evidence the court should have sustained a motion for a directed verdict.

For the reasons stated, the judgment of the District Court is reversed, and cause is remanded for further proceedings in accordance with this opinion.