## UNION PAC. R. CO. v. OWENS.

### No. 9940.

Circuit Court of Appeals, Ninth Circuit.

Aug. 5, 1942.

Rehearing Denied Sept. 14, 1942.

---

Roy F. Shields, of Portland, Or., and Hamblen, Gilbert & Brooke, of Spokane, Wash., for appellant.

Frank C. Hanley, of Portland, Or., for appellee.

Before WILBUR, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Appeal from a judgment after jury verdict in favor of the plaintiff-appellee for damages resulting from the death of her husband, an employee of the defendant-appellant Railroad Company, who was fatally injured during certain switching operations in which he was participating. The action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59.

Two causes of action were stated in the complaint, and each cause of action set out five separate grounds of alleged negligence on the part of the appellant, to whom we shall refer herein as the Railroad Company. At the close of all of the evidence the trial judge found that four of the alleged grounds of negligence and the proof submitted by the plaintiff in connection therewith were legally insufficient to submit to the jury. The case was submitted on the one remaining ground of negligence, namely, the alleged violation of Company Rule 30 and the defendant's defenses of the decedent's negligence and assumption of risk. Company Rule 30 provides as follows:

"Engine bell must be rung when an engine is about to move and when approaching or passing public crossings at grade, stations, tunnels and snowsheds."
and the defendant's defenses of the decedent's negligence and assumption of risk.

The evidence concerning the accident which resulted in the decedent's death is, briefly, as follows:

Decedent was employed by the appellant Railroad Company as engine foreman and was in charge of the switching operations to which we shall hereinafter refer. Working with the decedent and subject to his orders were two other switchmen, Koefod and Hinkle, and the engine crew composed of engineer Richards and fireman Seal.

This crew under the direction of the decedent was making up a train of freight cars in the old Spokane switchyard for transfer to various other roads. Operations were conducted over a series of tracks numbered from 1 to 13 and several other tracks designated locally by such names as the "old main line", etc. These tracks were all joined by inter-connecting leads and switches. Generally the tracks ran in an easterly and westerly direction.

On the operation in question the engine had headed west on the old main line and had coupled onto two box cars. The engine then backed up easterly pulling the two cars. During this movement the decedent was riding on the stirrup, holding the grab irons on the north side at the west end of the car coupled to the engine, and his switchman Koefod was riding about three or four feet away from him on the north side of the next car. While riding in this position the decedent verbally instructed Koefod to "let these cars go 13". As the cars passed over lead switch No. 7, which served tracks 7, 8, 9, 10, 11, 12 and 13, the decedent dropped off and gave the engineer the stop sign. The cars stopped past the switch a distance variously estimated at seven to thirty feet. The decedent then walked around the west end of the rear car and crossed the track to No. 7 switch stand which was on the south side of the track. Koefod took up a position some twenty feet north of the cars where he could plainly see the switch points, although the view of the decedent and the switch stand on the south side of the track were obstructed by the cars.

There is no testimony to the effect that anyone saw the decedent throw the switch

[since he was obstructed from the view of the witness Koefod as above stated] but Koefod saw the switch points change into line with No. 13 lead. He thereupon signalled the engineer [who was also on the north side] to kick the cars in toward No. 13 track.

The engineer in response to the signal gave the cars a kick or quick push and switchman Koefod pulled the pin uncoupling the cars from the engine permitting the cars to roll on down toward track 13, while the engine stopped and started back to get another car.

Koefod after pulling the pin stepped on the foot board of the engine and almost immediately his attention was called to a man nearby who was pointing back down the track. Koefod looked back and saw the decedent lying on the ground on the south side of the track near the switch over which the cars had just been kicked.

There was no testimony or evidence as to the reason for the decedent being on the track in front of the cars which were kicked. It had been the practice without exception for the man handling the switch on this type of an operation to stay at the switch until the movement had been completed. A witness to the accident, however, testified that the decedent started across the track from the south to the north and was caught by the cars. We quote from the record of this witness' testimony: " * * * he [decedent] was looking north—just for an instant he turned his head down to the yard and when he straightened his head up—why just before he straightened his head up I got scared and I says 'them cars are going to corner him'—they were coming about six miles an hour—I had no way of telling how fast they were going—I had a head end view of the cars and before I could do a thing, or give him any warning, I was too far away—just as he turned around he seen the cars coming almost on top of him—he didn't have time to get out of the way—he throwed himself back and sideways, and as I recollect a draw bar hit him about in here—his right side—."

There was no bell rung during or preceding the operation which we have just described, and it is urged by the plaintiff that this was in violation of Company Rule 30 which we have quoted above.

The evidence is undisputed that the decedent had been in the employ of the Railroad Company in this switchyard for some twenty-two years, and that for over twenty years it had been the custom of the Company's employees, including the decedent, not to ring any bell in ordinary switching movements. It also appears by the testimony that on the day of the accident some two hundred switching movements had already been made by the decedent's crew, in none of which the bell was rung except when the operation crossed one of the city streets.

In view of this uncontradicted testimony it is our opinion that the case of Toledo, St. Louis & Western Railroad Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 217, 72 L. Ed. 513, compels a reversal of the cause.

In the cited case the injured employee was a car checker. The negligence complained of was in the company's failure to maintain an adequte space between the tracks in the yard and the failure of other employees of the company to warn him of the approach of the cars. In holding that there could be no recovery, the Court said,

"And there is no support for the assumption that plaintiff was without knowledge of the switching practice followed in that yard or that the movement in question created an unusual hazard. On the evidence it must be held that he knew how switching was done there; and, in the absence of proof that he was exposed to some unusual danger by reason of a departure from the practice generally followed, it cannot be held that defendant was in duty bound to give him warning. The members of the switching crew had a right to believe that he would keep out of the way of the shunted car. [Citing Aerkfetz v. Humphreys, 145 U.S. 418, 12 S.Ct. 835, 36 L. Ed. 758.]

"In any event plaintiff assumed the risk. He was familiar with the yard and the width of the space between the tracks and knew that cars were liable to be shunted without warning to him. The dangers were obvious and must have been fully known and appreciated by him. * * *"

So in the instant case we are of the opinion that it must be held as a matter of law that the decedent assumed the risk. There is nothing in the record to indicate that he was exposed to any unusual danger by reason of a departure from the practice generally followed. He himself had given the switching instruction and knew that the cars would be kicked at any moment. The existence of Company Rule 30, which plaintiff urges should be construed so as

to require the ringing of the engine bell even in switching movements, is immaterial on the question of whether or not the decedent assumed the risk where as here the evidence is uncontradicted that the rule had not been so construed by employees including the decedent for more than twenty years prior to the accident.

In this view of the case we find it unnecessary to determine the proper construction to be given to Rule 30, whether or not a violation of such rule would constitute negligence per se, and other questions raised by the parties to this appeal.

Reversed.