## OWENS, EXECUTRIX, *v.* UNION PACIFIC RAILROAD CO.

No. 580.   Argued April 7, 1943.—Decided June 14, 1943.

*Mr. Frank C. Hanley* for petitioner.

*Mr. L. R. Hamblen,* with whom *Mr. Roy F. Shields* was on the brief, for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

Petitioner is the widow of an employee of respondent. In 1941 she brought this suit under the Federal Employers' Liability Act, 45 U. S. C. §§ 51–59.   Her hus-

band's death occurred in the course of his employment as foreman of a switching crew on February 16, 1939. She claims this was due to respondent's negligence. Petitioner sought to recover in one cause of action for Owens' suffering before death and in another for his death. The trial judge withdrew from the jury, for insufficiency of proof, four of the five separate grounds of negligence alleged. The case was submitted on the remaining ground, an alleged violation of Company Rule 30, and the defenses of assumption of risk and contributory negligence. Rule 30 provided:

"Engine bell must be rung when an engine is about to move and when approaching or passing public crossings at grade, stations, tunnels and snowsheds."

The jury found for petitioner and a judgment was entered on the verdict. The Court of Appeals reversed without considering the questions of negligence and contributory negligence. It held that as a matter of law Owens assumed the risk of death in the activities in which he was engaged when the accident occurred. 129 F. 2d 1013. We think this ruling was erroneous.

At the time of the accident and for fifteen years before, Owens was employed in the Spokane railroad yards as an engine or switching crew foreman. His crew was composed of himself, the engineer, the fireman, and two others. The crew's work consisted in shuttling freight cars about the yards in accordance with the requirements of the railroad's freight schedule.

The fatal switching maneuver was the shifting of two boxcars from their position on the "lead" track, west of a switch designated No. 7, to track 13. To accomplish this the engine was required to proceed westerly along the "lead" line until it hooked up the two freight cars, then to back the train thus formed along that line over switch 7 and, after the switch was set, to "kick" the cars so they

would roll over the switch on to track 13, while the engine stopped and started back to get another car. The engineer's cab was on the north side of the track, the switch stand and handle were on the south side.

While the engine was slowly backing after being coupled to the freight cars, Owens and one of his men, Koefod, rode on the north side of the train, clinging to the facing stirrups and handrails between the two boxcars. As the cars crossed the switch, Owens dropped off on the north side, telling Koefod to "let these cars go 13." When the train had passed, Owens crossed to the south side in order to set the switch. The train stopped with its western end at a distance estimated variously at seven to thirty feet from, but in any event unusually close to, the switch point. Koefod dropped off on the north side of the track and took a position about 20 feet north of the track from which he could see the switch points but could not see either the switch handle or Owens, both being obstructed from his view by the cars. Similarly, the engineer, on the north side of the train, could not see Owens. The other two men also were out of vision. When Koefod saw the switch point move into line, without awaiting any sign from Owens he signalled the engineer to "kick" the cars. This the latter promptly did. No warning was given to Owens either by bell, by whistle, or by call on starting the "kick." It is important to note that, all told, between the stopping of the receding train and the "kick" about ten seconds elapsed.

In this interval, Owens, having set the switch, began to walk across the track to the north side. No evidence was available or introduced to show his reason for doing so.[1]

---

[1] Indeed, the only evidence on the question of decedent's movements during this time is furnished by an engineer who saw the accident from the cab of a nearby engine. He testified:

"He was looking north—just for an instant he turned his head down to the yard and when he straightened his head up—why just before he

Since he was looking northward, he did not see the "kicked" cars coming toward him until too late. He then tried to leap out of the way, but failed and was struck by the cars, which rolled over him. His legs were severed from his body. Although he was removed to a hospital almost at once, he died within a few hours.

If this were all the evidence, the case would be clearly one in which the jury might find there was negligence on the part of Koefod or the engineer, or both, and that Owens' conduct amounted to no more than contributory negligence, if it was that.

But the company sought to avoid the effect of these facts by proving that Rule 30 was not applicable in ordinary switching operations, that it was not customary to ring the engine's bell during them, that it was customary for the man at the switch handle to remain there until movement of the "kicked" cars stopped, that it was the practice for the man in Koefod's position to signal for the kick without waiting either for a signal from the man at the switch, or to see whether the latter remained there, and that Owens had followed these practices in the past.

The purpose of this evidence apparently was twofold. The first object was to show that the company was not negligent. It sought particularly to avoid the effect of a finding that the engineer's failure to ring the bell was a violation of Rule 30 and therefore was negligence per se.

---

straightened his head up I got scared and I says 'them cars are going to corner him'—they were coming about six miles an hour—I had no way of telling how fast they were going—I had a head end view of the cars and before I could do a thing, or give him any warning, I was too far away—just as he turned around he seen the cars coming almost on top of him—he didn't have time to get out of the way—he throwed himself back and sideways, and as I recollect a draw bar hit him about in here—his right side——"

Q. "What happened to him?"

A. "It knocked him down right in the center of the track; as near as I could understand the first part of the trucks run over him."

But the evidence also was directed to prove that, apart from the ringing of the bell, neither Koefod nor the engineer acted negligently in assuming that Owens knew the matters sought to be proved and would remain at the switch until the cars had passed by; and therefore that they acted properly in going ahead without taking the precautions which would have been necessary if they had not been entitled to make this assumption.

The same evidence also was the basis of the company's contention that Owens assumed the risk of his injury. Although the Court of Appeals declined to determine whether it would support a legal conclusion there was no negligence, it apparently accepted the company's view that it established assumption of risk as a matter of law.

The difficulty with this ruling is that it ignores conflicting evidence presented on behalf of petitioner. This consisted in testimony to the effect that the men in the switching crew customarily "look out" for each other, particularly when a man was not in sight during operations, that one in Koefod's position would not signal for the "kick" until he saw that the man at the switch was out of harm's way, and that there was a custom to wait before ordering the "kick" until the man at the switch signalled to the man in Koefod's position.

In this state of the record there was a square clash of evidence bearing on whether Owens knew that the cars would be "kicked" without any prior indication to him—either by ringing the bell or by signal from others in the crew—and decided to cross the track anyway. And these questions were crucial, in the circumstances, to whether he voluntarily assumed the risk of the conduct which brought about his death.

That is true, unless it is to be held that Owens, when he accepted and continued in his employment, knew that risks of the general character which caused his death would be incurred and, by taking or continuing in the

work, accepted their burden; in other words, not that he knew of and accepted the particular risk at the time it descended, but knew generally that risks of such a character might fall and elected in advance to sustain them. We think no such view is consistent with the statute's provisions.

Recently this Court reviewed "the maze of law which Congress swept into the discard," [2] when in 1939 it amended the Employers' Liability Act to abolish the defense of assumption of risk. [3] In view of the amendment, no good purpose would be served in going over this morass again merely to dispose of this case. But we point to a few lodestars.

The common-law defenses, assumption of risk, contributory negligence, and the fellow-servant rule were originated and developed in common ground. [4] Not entirely identical in conception, they conjoined and overlapped in many applications. The overlapping areas first concealed, then created a confusion which only served to create more; [5] so that in time the three became more, rather than less, indistinguishable, And assumption of risk took over also, in misguided appellation, large regions of the law of negligence. What in fact was absence of departure from due care by the defendant came to be labelled "assumption of risk." [6] Apart from this effect, so long as the

---

[2] *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54.

[3] 53 Stat. 1404, 45 U. S. C. § 54.

[4] Cf. *Priestley* v. *Fowler*, 3 M. & W. 1 (1837); *Farwell* v. *Boston & Worcester R. Corp.*, 4 Metc. (Mass.) 49; Bohlen, Voluntary Assumption of Risk, 20 Harv. L. Rev. 14, 91 (1906); *Butterfield* v. *Forrester*, 11 East 60 (1809); *Davies* v. *Mann*, 10 M. & W. 546 (1842); Bohlen, Contributory Negligence, 21 Harv. L. Rev. 233 (1908).

[5] Cf. *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54, and authorities cited.

[6] *Ibid.*, concurring opinion of Mr. Justice Frankfurter; *Hocking Valley Ry. Co.* v. *Whitaker*, 299 F. 416 (C. C. A.); Harper, Torts (1933) 292, and authorities cited, note 11; Bohlen, Voluntary Assumption of Risk, 20 Harv. L. Rev. 14, 91.

area of application was overlapping [7] and each when established had the effect of defeating liability, it was not a matter of great moment to distinguish the defenses sharply or carefully, when the facts would sustain one.

But under the Employers' Liability Act prior to 1939 there was inescapable reason for making accurate differentiation of the three. For each produced different consequences. Assumption of risk remained a complete defense to liability. Contributory negligence merely reduced the damages.[8] The fellow-servant rule was abolished.[9]

These distinct consequences required distinct treatment of the three conceptions. This meant that so far as assumption of risk, which remained a complete defense, had swallowed up contributory negligence and the fellow-servant rule, the latter, having different effects, should be withdrawn from its enfolding embrace. In that way only could the clear legislative mandate be carried out and the distinct consequences attributed by it to each be attained. To permit assumption of risk still to engulf all the proper territory of contributory negligence and the fellow-servant rule would be only and plainly to nullify Congress' command.

Unfortunately the injunction has not been followed consistently. There are decisions which, in the guise of applying assumption of risk, do no more than shift to the injured employee the burden of his fellow-servants' negligence, while others appear to identify the doctrine with mere contributory negligence. Old confusions die hard. And in this instance some refused to die at all or did so only intermittently. We do not now attempt the refined

[7] Cf. Bohlen, Contributory Negligence, 21 Harv. L. Rev. 233, 243, *et seq.*

[8] 35 Stat. 66.

[9] 35 Stat. 65; *Chesapeake & Ohio Ry. Co.* v. *De Atley,* 241 U. S. 310; *Second Employers' Liability Cases,* 223 U. S. 1; *Reed* v. *Director General of Railroads,* 258 U. S. 92.

722

distinctions or the broader obliterations which might be required, if the 1939 amendment had not become law, in order to give effect to the original Congressional purpose. It is wholly inconsistent with that object and with the statute's wording to hold that the employee, merely by accepting or continuing in the employment, assumes the risk of his fellow-servants' negligence or that conduct on his part in a particular situation which amounts to no more than contributory negligence can have that effect.

In this case, if there was negligence upon the employer's part, as to which we express no opinion, it lay either in the company's failure to enforce Rule 30, if that rule was applicable to switching operations, or in the negligence of a fellow servant of Owens and nothing more than that.[10]   In the former case, assumption of risk would not apply, at any rate as a matter of law, in the absence of conclusive proof that the employee knew the rule was not applicable or had been abandoned and elected to take his chances in crossing the track.

If we turn then to the other alternative, the fellow-servant doctrine contemplated that an employee knew and assumed, when he accepted employment, the risks which negligence of his fellow employees might create. It was in fact a branch of assumption of risk.   When therefore Congress abolished the fellow-servant rule as a defense under the statute, it necessarily abolished the

---

[10] This is true whether the fellow-servant's negligence consisted in a violation of Rule 30, as the trial court permitted the jury to find, or in any of the other allegedly negligent acts or omissions, which the court refused to submit to the jury.   For in any event the conduct claimed to be negligent was that of Koefod or the engineer, both of whom were fellow servants.   We cannot assume that the court, when it cast its decision in terms of assumption of risk, intended to rule that there was no evidence of negligence (cf. note 6, *supra*), since its opinion expressly disclaims determining the proper construction of Rule 30, whether its violation would constitute negligence per se, and the other questions raised by the parties on the appeal.

defense of assumption of risk to this extent. In other words, it eliminated the general anticipation of fellow-servants' negligence, upon which the fellow-servant rule was founded. If anything of assumption of risk remained in relation to the negligence of a fellow employee, it was such as required a showing that the injured one knew of and accepted the risk in the particular incident or situation which brought about his injury. There was therefore in this case, consistently with the statute, no general assumption by Owens, by virtue of his acceptance or retention of the work, of the risk which caused his death in so far as it consisted in negligence by Koefod or the engineer.

What remained of the defense, therefore, narrows the inquiry to whether Owens can be shown to have anticipated and decided to chance the particular risk here created by the negligence of his fellow employees. Cf. *Reed* v. *Director General of Railroads,* 258 U. S. 92. As has been shown, respondent has not sustained this burden. That is true, whether the injury is couched in terms of Owens' actual knowledge [11] and deliberate choice [12] or of the "obvious" and "apparent" character of the risk.[13] For, to prevail on this defense, respondent had the burden

[11] Cf. 3 Labatt, Master and Servant (1913), §§ 1190–1192; *York* v. *Chicago, M. & St. P. R. Co.,* 184 Wis. 110, 198 N. W. 377; *Dollar Savings Fund & Trust Co.* v. *Pennsylvania Co.,* 272 Pa. 364, 116 A. 299; *Rummell* v. *Dilworth, Porter & Co.,* 111 Pa. 343, 2 A. 355, 363.

[12] Cf. *Thomas* v. *Quartermaine,* L. R. 18 Q. B. D. 685; *Yarmouth* v. *France,* L. R. 19 Q. B. D. 647; *Smith* v. *Baker & Sons* [1891] A. C. 325.

[13] Cf. *Seaboard Air Line Ry. Co.* v. *Horton,* 233 U. S. 492; *Gila Valley, G. & N. Ry. Co.* v. *Hall,* 232 U. S. 94; *Chesapeake & Ohio Ry. Co.* v. *De Atley,* 241 U. S. 310; *Chicago & North Western R. Co.* v. *Bower,* 241 U. S. 470; *Chesapeake & Ohio Ry. Co.* v. *Proffitt,* 241 U. S. 462; and compare *Schlemmer* v. *Buffalo, R. & P. Ry. Co.,* 205 U. S. 1, 220 U. S. 590; Bohlen, Contributory Negligence, 21 Harv. L. Rev. 233; Alexander, Re-Thinking Negligence, 11 Miss. L. J. 290.

of persuading the jury that the risk of being run down was "so plainly observable" that Owens was in fact aware of it and decided to chance it. Less than that, under this statute, would be no more than contributory negligence, which cannot be interchanged or overlapped with assumption of risk as a defense. The jury decided that respondent had not sustained the burden imposed. We cannot agree with the Court of Appeals that as a matter of law it has. The record shows neither such clear evidence of an informed and deliberate choice by Owens as would preclude a contrary verdict nor so "obvious" or "apparent" a danger as would do so.[14]

If there was negligence by the respondent, the statute requires something more than contributory negligence to defeat recovery, though that may minimize the damages. The jury found this issue in favor of the plaintiff. And the Court of Appeals did not purport to deal with it and did not do so unless, in the guise of finding assumption of risk, it identified the two. Since it did not deal with the question, we do not decide it. But we think it is clear that on the facts Owens' conduct amounted to no more than contributory negligence, if it was that.

Whether the trial court properly charged the jury that a violation of Company Rule 30 was ipso facto negligence [15] and took from it the other claimed grounds of negligence [16]

---

[14] Cf. *Gila Valley, G. & N. Ry. Co.* v. *Hall,* 232 U. S. 94; *Chesapeake & Ohio Ry. Co.* v. *De Atley,* 241 U. S. 310; *Chesapeake & Ohio Ry. Co.* v. *Proffitt,* 241 U. S. 462; *Chicago, R. I. & P. Ry. Co.* v. *Ward,* 252 U. S. 18; *Chicago & North Western Ry. Co.* v. *Bower,* 241 U. S. 470.

[15] Cf. *Gildner* v. *Baltimore & Ohio R. Co.,* 90 F. 2d 635 (C. C. A.); *Pacheco* v. *New York, N. H. & H. R. Co.,* 15 F. 2d 467 (C. C. A.).

[16] "(a) that defendant and defendant's employees carelessly and negligently failed and neglected to keep a proper lookout for plaintiff's decedent and to ascertain his whereabouts before moving said cars; which said lookout was the custom and practice known to and adopted by defendant; (b) that defendant and defendant's employees carelessly and negligently moved said cars upon said track without

are questions the Court of Appeals did not reach and we therefore have no occasion to decide. Similarly, in view of our conclusion on assumption of risk, we have no occasion to determine whether the 1939 amendment to the Federal Employers' Liability Act, abolishing that defense, operates where the accident occurred before its enactment but suit is brought after.

The judgment is reversed and the cause is remanded to the Court of Appeals for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE REED dissents because he reads the evidence as showing without contradiction that Rule 30 was not applicable to these switching operations and that it was the practice of switching crews under the circumstances of this movement to "kick" the cars without waiting for a signal from the man in decedent's position at the switch. It follows that the defense of assumption of risk is good.

The CHIEF JUSTICE and MR. JUSTICE ROBERTS join in this dissent.

---

any notice or warning whatsoever to plaintiff's decedent; (c) that defendant and defendant's yardmen carelessly and negligently failed and neglected to receive a hand or other signal from plaintiff's decedent before signaling defendant's engineer to kick or move the aforesaid cars; the receipt of which said signal was the custom and practice known to and adopted by defendant; . . . (e) that defendant carelessly and negligently failed and neglected to provide plaintiff with a safe place to work."