52 So.2d 196

JOHNSON v. LOUISVILLE & N. R. CO.

6 Div. 138.

Supreme Court of Alabama.

March 15, 1951.

Rehearing Denied May 10, 1951.

Hare & Parsons and R. Clifford Fulford, all of Birmingham, for appellant.

Chas. H. Eyster, of Decatur, and Gibson & Gibson, of Birmingham, for appellee.

FOSTER, Justice.

This is a suit for personal injuries by appellant against appellee under the Federal Employers' Liability Act, as amended August 11, 1939, 45 U.S.C.A. § 51 et seq. There was a verdict and judgment for defendant, from which plaintiff appealed to this Court.

584

The evidence which should be mentioned, material to the question of law presented, is that plaintiff (a fifty-two year old Negro man) was employed by defendant as a common laborer to pick up scrap and waste material at its shop at Boyles. This scrap was such as carpenters and repairmen discarded from the cars being repaired. Plaintiff was a very strong able bodied man and had not been sick in many years. His superior, whose orders he was bound to obey, was a Mr. Lyle who was an assistant foreman at that location. According to plaintiff's evidence, Mr. Lyle ordered him to move a large heavy timber or plate, as they refer to it, with an iron beam attached to it. He said it was eight or ten inches thick, about as long as a box car, and weighed two hundred and fifty to three hundred pounds. There was no other employee immediately present to help him. Plaintiff testified that he told Mr. Lyle, "That thing is too heavy for me to lift", to which Mr. Lyle replied, "You have got to get it up. We have to pull these cars, and the tractor will hit that thing and might kill somebody, and the big man will run you away from here." Plaintiff then got a cart on which to put the plate. He picked up the plate at one end, lifted it and put it down on the cart. This caused the cart to run out from under the plate and for it to fall heavily on plaintiff, who suffered severe injury to his back in extricating himself. Mr. Lyle testified that the plate or timber was a part of a stock car, twelve and one-half to thirteen feet long, and weighed around one hundred and fifty pounds. That what he said to plaintiff was: "Preacher, let's get this thing up from here, and plaintiff replied, "Mr. Lyle, that is pretty heavy.'" Mr. Lyle then asked him where his buddy was, and plaintiff replied he did not know. Lyle then said, "Find him, we will have to get that up and out of the way." Then Lyle left to sign the time cards. Other testimony by Lyle shows that he realized the plate was too heavy for one man to handle.

The first assignment of error is one which presents the most difficulty. Others are dependent upon the same principle. It is as to charge No. 26, given at the request of the defendant, and is as follows: "I charge you, gentlemen of the jury, that an employee of the railroad company with certain known duties to perform is the best judge of his own strength and physical ability and prowess, and that the duty is upon him to not knowingly over-exert or overtax his strength, and if you are reasonably satisfied from the evidence that at the time and occasion of plaintiff's alleged straining his back that he voluntarily and knowingly overtaxed his strength in attempting to place a top plate on a cart without aid or assistance, knowing that aid or assistance was available to him and could be had by him for the particular act he was then doing, then you cannot return a verdict for the plaintiff in this cause."

It will be seen at once that the charge in legal effect declares that plaintiff took all the risk of his personal injury by his own voluntary act if he voluntarily and knowingly overtaxed his strength (to any extent) in attempting to place a top plate on a cart without aid or assistance, knowing such aid was available and could be had. The effect of the charge is that such conduct was as a matter of law the proximate cause of his injury, since a verdict for defendant is required without so finding by the jury.

The correctness of the charge is dependent upon an application of the Federal Employers' Liability Act, as amended by the Act of August 11, 1939, 45 U.S.C.A. § 51. Prior to that amendment assumption of risk was a complete defense to a suit based on the Act, supra. Contributory negligence served only to affect the amount of the recovery, and that is its status now unaffected by said amendment. The amendment abolishes assumption of risk when an employee is injured or killed as a result in whole or in part from the negligence of the officers, agents, or employees of the carrier.

It is said in Tiller v. Atlantic Coast Line R. R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, that this amendment released the employee from the burden of assumption of risk by whatever name it is called, as though no doctrine of assumption of risk had ever existed. This does not affect

the legal status of contributory negligence, which is still available for a limited purpose.

The immediate effect of the abolition of the doctrine of assumption of risk was to cast into the discard the "primary duty rule". That existed when it was the primary duty of the employee to do an act, or refrain from doing one, such as obeying an order. A failure to perform that duty was not excused by the negligent failure of another employee to perform a duty to remind him of it, when his failure became apparent. By reason of such primary duty he assumed the risk of his own negligent or conscious failure to perform it. As a result of that principle his neglect was taken out of the category of contributory negligence, which is and was not a bar to recovery and became assumption of risk of the consequences of his act which was a bar. By the amendment, supra, assumption of risk is abolished. So that such neglect by the employee, although there may be a primary duty, is no more than contributory negligence. This is the effect of the Tiller case, supra.

But that still leaves undisturbed another principle which is properly speaking not in the nature of assumption of risk, though it is sometimes so called, but resembles more nearly the principle of sole proximate cause or last clear chance theory. It seems to be the same as our cases have denominated *"volenti non fit injuria."* It is thus expressed in our case of Robinson Mining Co. v. Swiney, 206 Ala. 617, 91 So. 476, 477. It is "founded on the consent, expressed or implied, of the employé, with full knowledge and appreciation of obvious danger and the taking of chances of injury or escape from such threatening situation or condition under which he contracts or voluntarily undertakes to discharge his services. The implication of consent does not arise or exist unless the defect and danger are obvious—known to and appreciated by such employé." There must be not only a knowledge of the dangerous condition, but also an appreciation of the risk resulting or which may follow. Southern Railway Co. v. McGowan, 149 Ala. 440(6), 43 So. 478.

In the case of Owens v. Union Pacific R. R. Co., 319 U.S. 715, 63 S.Ct. 1271, 1275, 87 L.Ed. 1683, it is said with reference to the amendment of August 1939, supra, that "if anything of assumption of risk remained in relation to the negligence of a fellow employee, it was such as required a showing that the injured one *knew of* and *accepted the risk* in the particular incident or situation which brought about his injury." It is said to be narrowed "to whether Owens (the employee) can be shown to have *anticipated and decided* to chance the particular risk here created by the negligence of his fellow employees." (Italics ours.)

We may add that if that situation is shown to exist, the negligence of the fellow employee is not a proximate contributing cause, because an independent efficient intervening cause has insulated it from proximity to the injury. So that to apply such a theory to an injured employee does not assert any principle of assumption of risk where it has been abolished. It presupposes a negligent act of a fellow employee. Against liability for this act on the part of the carrier, there is now no principle of assumption of risk. But the injured employee cannot recover by reason of another principle with which assumption of risk is sometimes associated, but which remains unaffected by the abolition of assumption of risk. For if the injured employee becomes conscious and appreciates the immediate danger to him from proceeding in its influence and voluntarily chooses to act and to take the risk from which he is injured as a proximate result, he cannot recover because his own voluntary act is the only proximate cause of his injury.

It is said in Blair v. Baltimore and Ohio R. R. Co., 323 U.S. 600, 65 S.Ct. 545, 548, 89 L.Ed. 490: "But he was commanded to go ahead by his superior. Under these circumstances it cannot be held as a matter of law that he voluntarily assumed all the risks of injury. * * * This court does not apply the doctrine of assumption of risk so rigorously." The court refused to require an employee to quit his job rather than do something which he knew was dangerous when ordered by his superior to do it. And it held that the employee cannot be

586

held as a matter of law to have assumed the risk by obeying a command of the employer's foreman to go on with his job.

Of course we accept the declaration of those cases as authoritative in respect to the principle discussed. We shall try to apply them here.

■ Charge 26, which we have quoted, directs a verdict for defendant hypothesized on a reasonable satisfaction from the evidence that plaintiff "voluntarily and knowingly overtaxed his strength in attempting to place a top plate on a cart, etc." The charge does not require a further finding that such voluntary and knowing act was the proximate cause of his injuries nor that he appreciated the danger of overtaxing his strength; and if it was done at the order of his superior, whose order he was bound to obey, the injury could have been proximately caused by such order as a contributing factor, for then it could not be said to have been voluntary in the sense here necessary to put on him all the risks of his conduct. If he was negligent in not disobeying the order of his superior, which proximately contributed to his injury, that did not require a finding for defendant, but it only affected the amount of the recovery, although he may have known that in obeying he would probably overtax his strength *in some degree*. That does not necessarily mean that such conduct amounted to a voluntary self injury. The effect of this conduct under all the circumstances should be left to the jury to determine whether it merely proximately contributed to his injury or whether his injury was proximately caused by his own voluntary act known and appreciated by him at the time to be such as would probably cause him to sustain such injury.

The judgment must be reversed for giving charge 26. There are other assignments of error which we do not think necessary to analyze. They should be considered in the light of the foregoing principles if they arise on another trial.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.